Kathleen E. DABURLOS

v.

COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY and Fidelity and Casualty Company of New York.

Civ. A. No. 69–1947.

United States District Court, E. D. Pennsylvania.

Dec. 12, 1973.

David F. Binder, Philadelphia, Pa., for plaintiff.

Francis E. Marshall, Marshall, Dennehey & Warner, Philadelphia, Pa., for defendants:

MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

I

In this diversity action, there are, presently pending before this Court, cross-motions for summary judgment.

At issue is the question of whether the insureds complied with the requirements of four insurance policies purchased from the defendants. Specifically, the narrowest questions presented

are, first, what the insureds were required to do to maintain coverage for the flight on which they were killed under the policies in question and the ticket exchange provisions thereof; and, second, whether it was possible and/or practicable to comply with the requirements of the ticket exchange provisions of the policies. We decide that as to this latter question there exists a genuine issue of material fact and related to this issue of fact and as to the former question, there exists a relevant contractural ambiguity.[1] Therefore, we deny both the motion of the plaintiff and the motion of the defendants for summary judgment.

## II

Plaintiff,[2] Kathleen E. Daburlos, is a citizen of Pennsylvania and the beneficiary of four insurance policies issued by the defendants.

Defendants are citizens of states other than Pennsylvania but doing business in Pennsylvania. They issued policies here in question and they are both members of the Continental Insurance Companies and are generally run by the same personnel.

The policies were purchased by Kenneth and Shirley Daburlos on May 19, 1968, at the Continental Insurance counter at the Philadelphia International Airport prior to their departure for Los Angeles on an United Air Lines plane. Both Mr. and Mrs. Daburlos purchased two policies, one from each defendant and each has a principal sum of $75,000

and the premium for each was $2.50. After purchasing the insurance policies, Mr. and Mrs. Daburlos mailed them to the plaintiff-beneficiary in an envelope provided by defendants with the policies.

Mr. and Mrs. Daburlos had purchased round trip tickets for flights from Philadelphia to Los Angeles and return to Philadelphia prior to purchasing the insurance in question. The itinerary on each is listed as Philadelphia, Los Angeles, Philadelphia. Insureds used these tickets to fly from Philadelphia to Los Angeles on a United Air Lines, Inc. airplane on May 19, 1968.

On May 22, 1968, Mr. and Mrs. Daburlos each purchased a sky tour round trip ticket from Los Angeles Airways, Inc. (LAA)[3] at Los Angeles International Airport (LAIA) for a round trip flight from LAIA to Anaheim/Disneyland and return. They made an uneventful flight from LAIA to Anaheim/Disneyland. However while they were passengers on the return flight from Anaheim/Disneyland to LAIA, the helicopter in which they were riding crashed and they were killed.

All four insurance policies are identical. They contain, at the top, blocks for the identification of the insured and the beneficiary. In addition, there is one block space for point of departure and one block space for point of destination and one of two squares to be checked indicating a one way on a round trip ticket. On each policy, Philadelphia was listed as the point of departure and Los Angeles as the point of destination and

---

1. Both the plaintiff and defendant have presented and extensively briefed theories of the case other than that which the Court addresses in this memorandum. We have carefully considered those theories. However, they all either hinge on the central issue of fact and contractural ambiguity discussed in this memorandum or other issues of fact or would require the Court to draw inferences in favor of a moving party in order for judgment to be granted. The procedural posture of the case precludes the Court from resolving such issues or drawing such inferences. Of course, we express no view on the merits of those theories.

2. The facts stated in this memorandum are based upon the stipulation of facts entered into between the parties and incorporated documents, the facts testified to by John T. Kane in his deposition which are not expressly controverted by the parties and which are incorporated by reference into the stipulation, and the admissions in the pleadings which are also made part of the stipulation of facts.

3. Los Angeles Airways was a Scheduled Air Carrier within the meaning of the policy provisions, set out *infra*.
issue in this action.

the trip designated as on a round-trip ticket. Immediately above these boxes appears the following: "I hereby apply to Company named below for Scheduled Air Carrier (Airline) Trip Insurance to insure me on one airline trip between the Point of Departure and Destination show below."

The principal clauses of the policy, as relevant here are as follows:

"2. INSURING CLAUSE: Ticket Or Pass Requirement. The *Company will pay* the *benefits* specified below *if during the term of this policy* the Insured *suffers loss* resulting directly and independently of all other causes *from accidental bodily injury* (hereinafter referred to as 'such injury'), sustained *under circumstances specified* below *during the first one-way or round trip flight taken by the Insured after the purchase of this policy* on Aircraft Operated by a Scheduled Air Carrier as defined below *from the Point of Departure to the Destination, both shown above, and return if round trip ticket is obtained before leaving said Point of Departure, provided that at the time that the Insured sustains such injury he is traveling on a ticket or pass covering the whole of said airline trip,* issued to him for transportation on an Aircraft Operated by a Scheduled Air Carrier. A ticket issued to the Insured aboard such aircraft after leaving the Point of Departure but before reaching the first scheduled stop of such aircraft shall be deemed to have been issued before leaving the Point of Departure.

3. SUBSTITUTE TRIP COVERED IF TICKET EXCHANGED. *In case of a change in the itinerary of said first airline trip referred to in Section 2 above,* following issuance of this policy and after the Insured has left the Point of Departure on said trip, *the insurance afforded as set forth in Section 2 above shall no longer apply on the original itinerary but shall apply on the new itinerary in the same manner and to the same extent as it would have applied on the original itinerary,* *provided that (1) the transportation ticket or pass issued to the Insured for said first airline trip prior to his leaving the Point of Departure has been exchanged for another ticket or pass* issued for transportation on an Aircraft Operated by a Scheduled Air Carrier on *the substituted trip and (2) the Point of Departure is the same as that shown above and (3) at least one other stop on the new itinerary is a stop that was scheduled on the original itinerary for said first airline trip.*

4. DEFINITION AND DELIMITATION OF COVERAGE. This policy applies only to such injury sustained by the Insured during such first or substituted airline trip referred to in Sections 2 and 3 above . . . ."

These three provisions are on the front of the policy. The other provisions of the policy relevant here are printed on the back of the policy.

"6. POLICY TERM. This *insurance shall commence* on the day and hour shown above and shall *terminate either* upon completion of the above described airline trip or upon expiration of, *or surrender for refund or credit of, the transportation ticket* hereinbefore referred to *but in no event shall this insurance extend beyond a period of twelve months.*

. . .

POLICY PROVISIONS. Entire Contract; Changes: *This policy,* including the endorsements and the attached papers, if any, *constitutes the entire contract of insurance.* No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or waive any of its provisions." (Emphasis added)

### III

Pennsylvania substantive law applies and governs the resolution of this controversy. Pittsburgh Bridge &

Iron Works v. Liberty Mutual Ins. Co., 444 F.2d 1286, 1288 n. 2 (3 Cir. 1971); First Pa. B. & T. Co. v. United States Life Ins. Co., City of N. Y., 421 F.2d 959, 962 (3 Cir. 1969); Eastcoast Equipment Co. v. Maryland Casualty Co., 207 Pa. Super. 383, 213 A.2d 91, 95 n. 5 (1966); Varas v. Crown Life Insurance Company, 204 Pa.Super. 176, 183, 203 A.2d 505, 508 (1964), cert. den. 382 U.S. 827, 86 S.Ct. 62, 15 L.Ed.2d 72 (1965).

■■■ However, summary judgment is not to be granted if there are unresolved issues of material fact and all doubts thereto are resolved against the moving party and factual inferences are not drawn in favor of the moving party. First Pa. B. & T. Co. v. United States Life Insurance Co., City of N. Y., *supra.* Moreover, the applicable standards do not change by reason of the fact that the Court is presented with cross-motions for summary judgment. Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3 Cir. 1968); F.A.R. Liquidating Corp. v. Brownell, 209 F.2d 375, 380 (3 Cir. 1954).

## IV

■■ It is undisputed that the accident on which the insureds lost their lives did not occur while either was traveling on a ticket covering the whole of the original trip from Philadelphia to Los Angeles to Philadelphia. Moreover, it is undisputed that the insureds did not exchange their original round trip tickets written by United Airlines for any other tickets.

LAA was a member of the Air Transportation Association (IATA). The IATA had standard tickets used by every airline member. Each member airline had the authority and was able to issue tickets for flights on other member airlines. Thus, LAA could issue a ticket for a flight on United Airlines and vice-versa. In 1968, it was possible for both United Airlines and LAA to issue a ticket to a passenger permitting him or her to fly from Phiadelphia to LAIA to Anaheim/Disneyland to LAIA to Philadelphia which would have been on a four-flight coupon ticket.

It is also undisputed that, at the time, any member of IATA could exchange tickets. This exchange procedure could be carried out without additional charge except for the cost of additional flights. In fact, at the time in question, the tickets of approximately sixty (60%) percent of the passengers of LAA were written by other airlines. Also, the premium under a trip policy of the defendants is the same for any trip within the continental United States regardless of the distance travelled. No change in the premium results as a consequence of an itinerary change on an exchange of tickets pursuant to the policy. Consequently, the premium price for the insurance policy in question would have been the same had the Daburlos' tickets included Anaheim as a destination point. Moreover, this would be true even if the original ticket had been exchanged for another ticket listing Anaheim as the destination point provided all other terms and conditions of the policy were met. The alleged purpose of the exchange provision is related to the delimitation of risk and investigatory costs.

The only scheduled air carrier operating between Los Angeles and Anaheim/Disneyland at the time of the accident was LAA.

The only facts available on the mechanics of the exchange of tickets come from the deposition of Mr. John T. Kane who was vice-president, treasurer, and a director of LAA at the time of the accident and who was familiar with the ticketing procedures of LAA as of that date.

In response to questions whether it was "physically possible" for the Daburlos' or any other passenger to have exchanged their original tickets for a new ticket that would have read—Philadelphia, Los Angeles Airport, Anaheim/Disneyland, Los Angeles Airport, Philadelphia—through any federally certified airline belonging to the A.T.A. and I.A.T.A., including LAA, United Airlines, American Airlines, etc., Mr. Kane

replied in the affirmative. However, Mr. Kane, at a later time, qualified his answers on the exchange practice. He stated that LAA would not, in a situation such as that presented in this case, have rewritten the ticket from Philadelphia to Los Angeles but rather only the unused portion of the original ticket would be rewritten. Thus, if the original ticket was for flights from Philadelphia to Los Angeles to Philadelphia, LAA would have exchanged tickets for the Los Angeles to Philadelphia portion by issuing a 3-part coupon ticket (I.A.T.A. ticket) showing Los Angeles to Anaheim/Disneyland to Los Angeles to Philadelphia. Apparently, the original ticket numbers would be put on the new tickets.

The actual exchange practice is not further clarified in the record. In light of the latter statement of Mr. Kane and the present procedural posture, we cannot, on the present record, say with certainty what the actual exchange practice of LAA or other airlines was on the date in issue.

We think it is obvious that the new ticket would have to list Philadelphia as the point of departure to comply with the literal terms of clause 3. The defendants, apparently, were of the same view when they wrote the brief in support of their motion. However, in their reply brief, they indicate that a new ticket—Los Angeles, Disneyland, Los Angeles, Philadelphia—would have sufficed. This is explained by the contention that when the insured exchanges the unused portion of his original round trip ticket for a new ticket, the new one must indicate the final destination which would be the original point of departure.

The policy, however, is not susceptible of this suggested construction. First, it is contrary to the express language of the policy. Even assuming that in the case of every round-trip within the meaning of the policy, the point of destination must be the same as the original point of departure, subsection (2) of clause 3 requires that the new ticket must have the same point of departure as that shown on the insurance policy. In this case, that subsection would require that Philadelphia appear as the point of departure on the new ticket. We do not understand this to be satisfied by the fact that Philadelphia is listed as the point of destination on the new ticket. The defendants have not suggested that subsection (2) represents a reference to the itinerary in fact rather than a ticketing requirement and such an interpretation would render the clause mere surplusage. Second, it appears that on a round-trip ticket and policy, the insured could change his itinerary within the meaning of clause 3 without the point of destination on the new itinerary being the same as the point of departure on the original itinerary. In the case of a one-way trip, the fact that the point of destination remained the same on an exchange of tickets for a changed itinerary would certainly be of no assistance to the insured. The importance of the above is that the requirement of subsection (2) of clause 3 applies to all of these substitute trips.

■■ The issue of fact present on the record as to the practicability or possibility of compliance with the literal exchange requirements of clause 3 precludes the Court from granting summary judgment to either party. Clause 3, itself, is silent on the lengths to which the insured must go to comply with its provisions and this may be significant depending upon the resolution of the factual question. To the extent that an ambiguity is created thereby, an opportunity must be afforded for the parties to present extrinsic evidence to attempt to dispel the obscurity from what was intended. *See, e. g.,* Framlau Corp. v. Upper Dublin School Auth. Bd., 219 Pa. Super. 369, 372, 281 A.2d 464, 465 (1971); Hodgins v American Mutual Liability Insurance, 261 F.Supp. 129, 130–131 (E.D.Pa.1966). Moreover, a policy is to be given a reasonable interpretation, such as was probably in the contemplation of the parties when the contract was made. Grandin v. Roches-

ter German Insurance Co., 107 Pa. 26 (1884). Finally, in some cases, provisions of insurance policies may violate public policy. Burne v. Franklin Life Insurance Co., 451 Pa. 218, 301 A.2d 799 (1973). As a result of the issues of fact in the present record, the Court cannot apply these or the other legal theories presented by the parties, and accordingly denies both motions for summary judgment.