Columbo A. BENCIVENGA and Adeline Bencivenga, Appellants,

v.

The WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS PENSION FUND, and the Trustees Thereof.

No. 84–3654.

United States Court of Appeals, Third Circuit.

Argued March 28, 1985.

Decided June 7, 1985.

Rehearing and Rehearing In Banc Denied July 3, 1985.

James C. Larrimer, argued, Dougherty, Larrimer & Lee, Pittsburgh, Pa., for appellants.

Charles J. Streiff, argued, Wick, Rich, Flue & Streiff, Pittsburgh, Pa., for appellees.

Before ALDISERT, Chief Judge, and SLOVITER and STAPLETON *, Circuit Judges.

### OPINION OF THE COURT

ALDISERT, Chief Judge.

The question for decision in this appeal by a pension claimant from an adverse summary judgment in favor of a pension fund is whether the fund could properly reduce the amount of early retirement benefits during the period between the date of early retirement and the time benefits would become payable under the plan to an amount equal to the actuarial equivalent of normal retirement benefits. To decide this question we must interpret provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and two regulations of the Treasury Department. We agree with the district court's conclusion that trustees of a fund could reduce such benefits without violating the provisions of ERISA, and therefore affirm. For the most part, we are writing in a historical sense only, because, as will be later developed, Congress has now amended the ERISA statute in a manner that will

have significant bearing on future claims of this kind. See *infra* notes 3 and 4.

### I.

After working 29 years for Morris Paper Company, Columbo A. Bencivenga retired on March 5, 1979, at the age of 52. Under the terms of the Western Pennslyvania Teamsters Employees Pension Plan he would be eligible for an early retirement pension when he reached age 55. When he retired in 1979, the actuarial equivalent formula used by the plan to reduce normal retirement age benefits, payable at age 60, to that received at early retirement was "⅓ of one (1) percent for each month that the Early Retirement Date precedes age sixty." When Bencivenga retired, he had more than the maximum 25 years of credited service and the unit multiplier in effect was $22.00. Under the Plan, his normal retirement benefit would have been $550.00 per month. Plan § 4.4(b), *reprinted in* app. at 32. Using the ⅓ of one percent discount factor in effect at that time, Bencivenga anticipated an early retirement pension of $440.00 per month when he reached age 55.

On November 26, 1979, however, the trustees of the Plan amended the Plan to increase gradually the discount factor to 7/10 of one percent for each month the participant retired before age sixty. App. at 58. This was done to insure that the benefits paid to a participant retiring prior to the normal retirement age were equal in value to those that would be payable at the normal retirement age. When Bencivenga reached age 55 and applied for his pension, the trustees, using the new discount factor, approved a pension of only $319 per month. After unsuccessfully appealing the trustees' decision, Bencivenga and his wife Adeline, who was designated to receive joint and survivor benefits under the Plan, filed this action, alleging that the trustees' decision violated ERISA § 204(g). Both sides moved for summary judgment. The

---

* At the time of oral argument Judge Stapleton was Chief Judge of the United States District Court for the District of Delaware, sitting by designation. He is now a member of this Court.

district court determined that the benefits affected were not accrued benefits protected under ERISA. The court found that the trustees' actions should therefore be evaluated under either a "reasonableness" or "arbitrary and capricious" standard, and offered both parties the opportunity "to conduct discovery and file affidavits" on this issue. Although the fund filed supporting affidavits, the plaintiff did not. The court then entered summary judgment for the defendants. Bencivenga appeals.[1]

## II.

Bencivenga raises two contentions in this appeal. First, he argues that a material issue of fact exists, because of which summary judgment was inappropriate. Second, he argues that defendant was not entitled to judgment as a matter of law because the early retirement benefits affected by the trustees' actions are protected from reduction by ERISA. On review of the first contention, we must decide whether the district court impermissibly resolved a disputed issue of material fact; on the second contention our review is plenary. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573–74 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

## III.

Appellant's first contention, that there was a genuine issue of material fact that precluded the issuance of summary judgment in favor of the fund, is at its worst, imprecise, and at best, unpersuasive. Ap-

pellant seems to argue that he can elect not to file any document to contest an affidavit of facts supporting the summary judgment motion, and then argue on appeal that his opponent's "affidavit, not subject to cross-examination by the beneficiary, should not be accepted by the court at face value." Brief for Appellant at 41. This is simply not the law. Under Rule 56(e), Federal Rules of Civil Procedure, a party resisting a summary judgment motion may not rest upon the mere allegations or denials of his pleading. *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). In opposing the motion, his response "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.* In the vernacular, you may not "lie doggo" in the summary judgment proceedings in the district court, and on appeal claim a defense on the facts.

■ On the other hand, appellant further complains that the district court "has not articulated the basic material facts" upon which the motion was granted. This, of course, is not necessary. In granting summary judgment, the district court assumes that all the factual averments contained in the papers before it are true. *Smith v. Saxbe*, 562 F.2d 729, 733 (D.C.Cir.1977).

■ Moreover, the district court was faced with cross motions for summary judgment and we are satisfied with its conclusion that the matter was ripe for summary judgment.[2] We now turn to the merits.

---

1. In this opinion the Bencivengas will be referred to in the singular as they refer to themselves in their brief.

2. The district court stated:

Where cross-motions for summary judgment are presented, each side essentially contends that there are no issues of material fact from the point of view of that party. The court must therefore consider each party's motion for summary judgment separately. Since each side is moving for summary judgment, each side bears the burden of establishing a lack of genuine issues of material fact. Such inherently contradictory claims do "not constitute an agreement that if one is rejected

the other is necessarily justified or that the losing party waives ... determination whether genuine issues of material fact exist." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968). Moreover, the standards under which the court grants or denies summary judgment do not change by virtue of cross-motions being presented. *Daburlos v. Commercial Ins. Co. of Newark, N.J.*, 367 F.Supp. 1017, 1020 (E.D.Pa.1973).

As a general rule, courts do not favor the summary disposition of cases on their merits. Nevertheless, in an appropriate case, an early disposition may save the parties needless and often considerable time and expense which otherwise would be incurred during trial. At

## IV.

In order to determine if the district court properly granted summary judgment, we must decide whether early retirement benefits are "accrued benefits" protected by ERISA. We look first to the plain language of the statute. ERISA § 204(g), 29 U.S.C. § 1054(g), and its tax counterpart, ERISA § 1012(d)(6), 26 U.S.C. § 411(d)(6), prohibit amending a pension plan to reduce a participant's "accrued benefits." The term is defined in ERISA § 3(23), as "the individual's accrued benefit as determined under the plan and ... expressed in the form of an annual benefit commencing at normal retirement age...." 29 U.S.C. § 1002(23). "Normal retirement age" is that specified in the plan, or the later date of attaining age 65 or 10 years participation in the plan. 29 U.S.C. § 1002(24). Thus, in the context of "accrued benefits," ERISA's specific reference is to normal, rather than early, retirement.[3]

ERISA's legislative history also indicates that the Act was not intended to assure the sanctity of early retirement expectations. The House Report states:

> The term "accrued benefit" refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits.... To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.... Also, the accrued benefit to which the vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age
>
> ....
>
> Generally, an individual's "accrued benefit" under a defined benefit plan is to be expressed in the form of an annual benefit commencing at normal retirement age.

H.R.Rep. No. 807, 93d Cong., 2d Sess. 57, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4670, 4726. Legislative history, therefore, supports the literal language of the Act.

Case law also supports the conclusion that early retirement benefits are not accrued benefits under ERISA. In *Sutton v. Weirton Steel*, 724 F.2d 406 (4th Cir.1983), a parent company, National Steel Corp., sold its Weirton Steel Division to a new company, Weirton Steel Corp., which was owned by the Division's employees. National agreed to retain responsibility for normal retirement benefits accrued before the sale. In addition to normal retirement benefits, National had provided employees unfunded early retirement benefits in the event of shutdown or layoff. The sales agreement made it clear that the sale would not trigger payment of early retirement benefits. Employees who would have been eligible for early retirement sued, alleging that denial of the early retirement benefits violated ERISA. The Court of Appeals for the Fourth Circuit held that early retirement benefits were an ancillary benefit not protected by ERISA and that they could be altered, or even eliminated, without violating ERISA. *Id.* at 410 (citing *Fentron Industries v. National Shopmen*

---

minimum, a partial disposition of the case at an earlier stage will refine the issues which remain for final resolution. Thus, summary judgment is a useful tool when there is no disagreement over the critical facts. *See Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982).

In the action before us, both sides essentially agree and the record reflects that there are no genuine factual issues relative to the threshold legal question. Therefore, we shall proceed to consider that question. App. at 331–32.

**3.** We note that Congress has amended ERISA § 204(g), 29 U.S.C. § 1054(g), to include early

retirement benefits within its accrued benefits protection for plan years beginning after December 31, 1984. Retirement Equity Act, § 301(a)(2), Pub.L. No. 98–397, 98 Stat. 1450–51 (1984). However, the amendment does not apply to plan years before January 1, 1985, and the Act's legislative history states that "no inference is to be made on the basis of this clarification as to the scope of the [§ 1054(g)] prohibition before the effective date of the provision." S.Rep. No. 575, 98th Cong., 2d Sess. 28, *reprinted in* 1984 U.S.Code Cong. & Ad.News 2547, 2574.

*Pension Fund,* 674 F.2d 1300, 1306 (9th Cir.1982) (past service credits of non-vested participants are "ancillary" and may be canceled) and *Fine v. Semet,* 699 F.2d 1091, 1093 (11th Cir.1983) (ERISA does not require payment of early retirement—any right to such benefits must be found in individual agreements)).

Based on *Sutton* and other cases, *i.e., Hernandez v. Southern Nevada Culinary & Bartenders Pension Trust,* 662 F.2d 617, 619 (9th Cir.1981) (no vested right to receive retirement benefits before normal retirement age), and *Petrella v. NL Industries, Inc.,* 529 F.Supp. 1357, 1365–66 (D.N.J.1982) (all employees not entitled to age 55 retirement simply because some granted such retirement when division sold), the district court in this case properly determined that the "weight of authority is that early retirement benefits are not considered 'accrued benefits' under ERISA."

### V.

 Faced with such formidable authority, appellant attempts a flank attack on the reasoning of these cases. He argues that his right to an early retirement had already vested under the plan and therefore could not be reduced. But there may not be an end run around the statutory concept of "accrued benefits." Whether rights have "vested" depends on whether they are "accrued benefits." This is because under ERISA only accrued benefits vest. 29 U.S.C. § 1053(a). Appellant's argument must at all times focus on whether the early retirement benefits are "accrued benefits"; he cannot ignore this requirement. As the Supreme Court stated in *Allesi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 512, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981), "vesting" does not guarantee a particular method of computing retirement benefits, as the appellant appears to be arguing here; only the participants' "accrued benefits" are protected against reduction.

**4.** Judge Sloviter agrees with the conclusion that appellant has no claim for breach of contract

Appellant also argues that he has a common law contractual claim to the early retirement benefits. However, whether such a claim exists is determined by the terms of the plan. The appellant had not fulfilled the condition for claiming such a benefit prior to reaching age 55. He, therefore, has no valid contractual claim to benefits other than those which the plan specified at the time he reached 55.[4]

### VI.

Were these our only considerations, we could terminate our analysis here. But complicating the decision here is a problem, not presented to the district court, and not urged in the primary briefing, but the subject of supplemental briefing and oral argument at our request. The difficulty stems from the existence of two Treasury Department regulations, one of which can arguably be said to support the claimant's contention here; the other, the fund's contention. We must now make a detailed analysis of these regulations.

### A.

We take as our beginning point ERISA § 206(a) which provides that where a plan provides for the payment of an early retirement benefit, an employee who satisfies the service requirements for such a benefit but separates from service before satisfying the age requirement, "is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, *actuarially reduced under regulations prescribed by the Secretary of the Treasury.*" 29 U.S.C. § 1056(a) (emphasis supplied). From this, the Secretary has specific authority to promulgate regulations concerning the actuarial reduction of early retirement benefits for an employee such as appellant.

Next, Title II of ERISA, the tax portion of the Act, in § 1012(d)(6), 26 U.S.C. § 411(d)(6), contains a prohibition of accrued benefit reduction similar to that of

for the reasons set forth in Judge Stapleton's concurring opinion.

§ 204(g). Under that section the Secretary has enacted the following regulation:

(b) *Prohibition against accrued benefit decrease.* Under section 411(d)(6) a plan is not a qualified plan ... if a plan amendment decreases the accrued benefit of any plan participant.'.... For purposes of determining whether or not any participant's accrued benefit is decreased, all the provisions of a plan affecting directly or indirectly the computation of accrued benefits which are amended with the same adoption and effective dates shall be treated as one plan amendment. *Plan provisions indirectly affecting accrued benefits include ... actuarial factors for determining optional or early retirement benefits.*

26 C.F.R. § 1.411(d)–3(b) (1977) (emphasis supplied). Finally, 29 U.S.C. § 1202(c) specifically states that regulations promulgated by the Secretary of the Treasury under Title II of ERISA, such as the above, also apply to the accrued benefit reduction prohibition of § 204(g).

On the surface, Regulation 1.411(d)–3(b) appears to address the issue before us, and Congress has indicated that it should apply to ERISA § 204(g). But we must now examine another treasury regulation.

#### B.

The Secretary has also promulgated the following regulation which conforms to the legislative history of the Act and can be read to exempt early retirement benefits from protection as accrued benefits under the Act:

In general, the term "accrued benefits" refers only to pension or retirement benefits. Consequently, accrued benefits do not include ancillary benefits not directly related to retirement benefits.... For purposes of this paragraph a subsidized early retirement benefit which is provided by a plan is not taken into account, except to the extent of determining the normal retirement benefit under the plan....

26 C.F.R. § 1.411(a)–7(a)(1)(ii).

From a cursory reading of Regulation 1.411(a)–7(a)(1)(ii) and 1.411(d)–3(b), two considerations are readily apparent: first, Regulation 1.411(a)–7(a)(1)(ii) can be read to contradict the language of Regulation 1.411(d)–(3)(b); yet the language of Regulation 1.411(a)–7(a)(1)(ii) seems to be in perfect congruence with the legislative history of ERISA set forth heretofore in Part IV, *supra,* with the leading case of *Sutton* and the other cases relied upon by the district court.

■ Our starting point now is the precept that the court must reconcile, wherever possible, seemingly inconsistent statutes or regulations. *See Citizens to Save Spencer County v. United States EPA,* 600 F.2d 844, 870–71 (D.C.Cir.1979). If a reconciliation is impossible we must decide whether, in promulgating either or both regulations, the Secretary exceeded his statutory authority, or if the regulation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Batterton v. Francis,* 432 U.S. 416, 424–26, 97 S.Ct. 2399, 2404–06, 53 L.Ed.2d 448 (1977). We conclude that in this instance the language of Regulation 1.411(d)–(3)(b) is not in fact inconsistent with Regulation 1.411(a)–7(a)(1)(ii).

We must understand that two phenomena are present here: first, the purpose of the discount factor; second, the result of its application to the amount of benefits received. Clearly an upward adjustment of the discount factor will decrease the amount of benefits paid. But the amount of benefits paid a participant retiring prior to the normal retirement age is adjusted downward in order to guarantee that his benefits during his early retirement are equal in value to those that would have been payable at the normal retirement age. The amount discounted is increased for each month the participant retires prior to age 60 to achieve actuarial equivalence. Thus, it is important to understand here that the actuarial equivalent objective was not altered. It remained constant.

■ We believe that the most accurate reading of the regulations involved indi-

cates that the amount in excess of the actuarial equivalent of normal retirement benefits is a subsidy, and that this subsidized amount is not protected from reduction as an accrued benefit. Regulation § 1.411(a)–7(a)(1)(ii) states that a *"subsidized* early retirement benefit" is not a protected accrued benefit under a pension plan. Also, the regulations provide the following example of an unprotected subsidy in a plan: "Even though the actuarial value of the early retirement benefit could exceed the value of the benefit at the normal retirement age, the normal retirement benefit would not include the greater value of the early retirement benefit *because actuarial subsidies are ignored."* 26 C.F.R. § 1.411(a)–7(c)(6) Example (1) (emphasis supplied). Another instance in the regulatory scheme where "subsidies" are ignored is in the treatment of temporary supplements to early retirees in advance of Social Security eligibility, or "Social Security supplements." 26 C.F.R. § 1.411(a)–7(c)(4), (6) Example (3). It follows, then, that a plan that provides for a higher level of payments for early retirement when actuarially compared to normal retirement benefits, contains an actuarial subsidy for early retirees that is not protected as an "accrued benefit." [5]

Here, the record supports the conclusion that the amendment simply eliminated a subsidy. The Plan's Trustees enacted the increased discount factor to insure that benefits paid as a result of early retirement actually were the statistical or actuarial equivalent to those which would be payable at the normal retirement age. In an affidavit that was uncontradicted by the appellant, the Plan's actuarial consultant, Frank Stokes, stated that prior to the amendment

he "examined at great length the effect of the applied discount factor upon the financial stability of the fund." App. at 183. He found that in 1978, losses from this source had risen to $1.2 million and were increasing. He recommended that the trustees increase the discount factor and that in his opinion the increase "in Amendment 9 would result in the early retirement pension benefit becoming actuarially equivalent to the normal retirement benefit." *Id.* at 184.

We note that the Internal Revenue Service has taken a broad view of the effect of Regulation § 1.411(d)–3(b) and has apparently concluded that *any* amendment causing a change in the discount factor or method of determining actuarial equivalence that has the effect of reducing the amount of early retirement benefits is prohibited as a decrease of accrued benefits. Rev.Rul. 81–12, 1981 Cumm.Bull. 228. However, unlike authorized regulations, Revenue Rulings, as interpretive actions, do not have the force of law and we need not accept the full breadth of the IRS's theory. *Baker v. Otis Elevator Co.,* 609 F.2d 686, 691–92 (3d Cir.1979).

■ We conclude that the most consistent reading of ERISA and the applicable regulations is that altering the discount factor used in computing an early retirement benefit so as to achieve *bona fide* actuarial equivalence to the normal retirement age benefit is not an impermissible reduction of accrued benefits. So interpreted, Regulation § 1.411(d)–3(b) is congruent with the Act and its legislative history; any other interpretation would subject the regulation to nullification as being promulgated in conflict with the underlying statutory scheme.

---

5. The Retirement Equity Act of 1984, although by its terms not effective retroactively as to this amendment of the Teamsters Plan, recognizes and builds upon the distinction between actuarially reduced early retirement benefits and those that are in excess of actuarial equivalence, or subsidized benefits, choosing to treat less favorably the right to a subsidized benefit. The Senate Report defines a "benefit subsidy" as "the excess of the value of a benefit over the actuarial equivalent of the normal retirement benefit."

S.Rep. No. 575, 98th Cong., 2d Sess. 28, *reprinted in* 1984 U.S.Code Cong. & Ad.News 2547, 2574. The 1984 Act is thus premised on the theory that early retirement benefits may be "accrued benefits," and also on the view that a benefit subsidy may be reduced in circumstances that would be impermissible for an early retirement benefit that is already actuarially equivalent to the normal retirement benefit at normal retirement age.

The judgment of the district court will be affirmed.

STAPLETON, Circuit Judge, concurring.

I conclude that the challenged amendment violates neither Mr. Bencivenga's rights under ERISA nor his rights under the Western Pennsylvania Teamsters and Employers Pension Plan. I write separately because I reach this conclusion by a route different from that taken by my colleagues.

As Chief Judge Aldisert has persuasively demonstrated, the text of ERISA, its legislative history, and the case law construing it all support the proposition that an early retirement benefit is not an "accrued benefit" directly protected from reduction by Section 204(g). 29 U.S.C. § 1054(g).

As I read Treasury Regulation § 1.411(d)–3(b) (1977), it does not conflict with this clearly expressed intention of Congress. The key to any understanding of this regulation in the present context is recognition of the fact that changes in actuarial factors for determining early retirement benefits are mentioned as one example of changes which may *indirectly* affect the accrued benefit of a participant. If an early retirement benefit were an accrued benefit, a change in an actuarial factor used to determine that benefit would obviously affect it *directly*. For this reason, I think it much more likely that the last sentence of the regulation refers to situations in which, under the terms of a particular plan, a change in an early retirement benefit formula has an *indirect* and adverse effect on benefits to be received at normal retirement age and on the accrual of rights therein.[1]

Since an early retirement benefit is not an accrued benefit under ERISA, it follows that the challenged amendment does not violate Section 204(g) of that statute.

The remaining question presented by this appeal is whether the alteration of Mr. Bencivenga's early retirement benefit breached his contract rights under the Plan. This Court has held that employees and their employer may bargain for benefits beyond those required to satisfy ERISA and that, when they do so, employees may enforce their rights to those benefits in the federal courts. *Murphy v. Heppenstall Co.*, 635 F.2d 233 (3d Cir.1980), *cert. denied*, 459 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982). I, accordingly, turn to the issue of whether the Plan conferred upon Mr. Bencivenga protection against any reduction in the amount of his early pension benefit. I conclude that it does not.

Section 10.4 of the Plan stipulates that the "provisions of ... [the] Plan may be amended, as provided in the Trust Agreement, at any time by an instrument in writing executed by the Trustees." Section 10.7 of the Trust Agreement provides that the "Plan may be amended at any time by an instrument in writing executed by the Trustees, provided, however, in no event shall the Pension Fund be used for any other purpose other than the purposes set forth in ... [the] Trust Agreement and the ... Plan, and for the purposes of paying the necessary expenses incurred in the administration of the Pension Fund." The governing documents contain no further qualifications on the right of the Trustees to amend the Plan.[2]

Mr. Bencivenga reads Article III of the Plan to foreclose amendments which would

1. Under Section 3(22), "the term 'normal retirement benefit' means the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U.S.C. § 1002(22). Under Section 204, the minimum rate of accrual of "accrued benefits" may be a function of the "normal retirement benefit" under the plan. 29 U.S.C. § 1054. In any plan in which a formula for "accrued benefits" includes the "normal retirement benefit", a reduction in the early retirement benefit may indirectly and adversely effect "accrued benefits."

2. ERISA does not require that a plan provide protection of accrued benefits against amendment. Indeed, amendments which reduce accrued benefits are permissible if approved by the Secretary. 29 U.S.C. §§ 1054(g) and 1082(c)(8).

occasion a reduction in the amount of early retirement benefits. In his view, that Article characterizes the right of a participant in Mr. Bencivenga's position to an early retirement benefit as a "nonforfeitable" or "vested" right and this means not subject to elimination or change. Section 3.2 and 3.3 of Article III, prior to the challenged amendment, provided as follows:

*Section 3.2 Eligibility.* A Participant will have a nonforfeitable right to a pension benefit, as provided in Article IV and subject to the conditions required therein, if he has completed ten (10) Years of Participation since his last Break in Service Date.

*Section 3.3. Amount of Pension.*

(a) Notwithstanding anything in Section 3.2 to the contrary, the monthly amount of the Normal Vested Pension Benefit commencing at the date which would have been the Participant's Normal Retirement Age if he had not incurred a Break in Service, shall be equal to the product of (i) the "unit multiplier" as specified in Appendix A and (ii) the Participant's Credited Service, both factors to be determined as of his Termination Date.

(b) The monthly amount of the Early Vested Pension Benefit shall equal the monthly amount of the Normal Vested Pension Benefit reduced one-third (⅓) of one (1) percent for each month that the early retirement date precedes age sixty.

Sections 4.2 through 4.4 of the referenced Article IV provided in part as follows:

*Section 4.2. Conditions for Normal Retirement Benefit.* Any Participant who attains his Normal Retirement Age, as defined in Section 4.1(a) of this Pension Plan, and has completed ten (10) Years of Participation since his last Break in Service Date, may retire and shall be entitled to receive a pension under this Pension Plan.

*Section 4.3. Conditions for Early Pension Benefit.* Any Participant who has at least fifteen (15) years of Credited Service, of which at least five (5) years

are of Future Credited Service, may retire early upon the attainment of age fifty-five and shall be entitled to receive a pension under this Pension Plan.

*Section 4.4. Amount of Pension.*

(a) *Normal Pension Benefit:* The monthly amount of Normal Pension granted a retiring Participant eligible for such benefit under the provisions of Section 4.2, shall equal the product of (i) the "unit multiplier" determined in accordance with Appendix A and (ii) the Credited Service, both factors to be determined as of the Normal Retirement Pension beginning date defined in Section 4.5(a).

(b) *Early Pension Benefit:* The monthly amount of Early Pension granted a retiring Participant eligible for such benefit under the provisions of Section 4.3, shall equal the product of (i) the "unit multiplier" and (ii) the Credited Service period of such Participant, both factors to be determined as of the Early Retirement Pension beginning date defined in Section 4.5(b), with such product to be reduced one-third (⅓) of one (1) percent for each month that the Early Retirement Date precedes age sixty.

Chief Judge Aldisert finds Mr. Bencivenga's Article III argument unpersuasive because the amendment came before Mr. Bencivenga attained the age of 55 and became entitled to actually receive pension payments. In his view, Mr. Bencivenga's right did not become "nonforfeitable" under Article III of the Plan until he met this final "condition" of entitlement under Article IV. I agree that the "pension benefit" to which Section 3.2 confers a "nonforfeitable right" following ten years of participation is subject to the conditions found in Article IV. I cannot agree, however, that the right to such a pension benefit does not become "nonforfeitable" within the meaning of Section 3.2 until a participant attains the age when pension payments are to commence. First, I think it fair to assume that the phrase "nonforfeitable right" in a pension plan governed by ERISA is used as a term of art in the same way it is used in the statute and, as used in ERISA, nonfor-

feitable rights are acquired before one becomes entitled to immediate payment of a pension benefit. Section 3(19), 29 U.S.C. § 1002(19), defines a "nonforfeitable" right as including an unconditional and legally enforceable right to a *"deferred* benefit", as well as to an "immediate" benefit, and Section 203(a)(3)(A), provides that a "right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that it is not payable if the participant dies." 29 U.S.C. § 1053.

Second, at least one purpose of the concepts of a "nonforfeitable right" in Section 3.2 and of a "Normal Vested Pension Benefit" and an "Early Vested Pension Benefit" in Section 3.3 is to provide protection for those who are laid off or change jobs before attaining an age at which retirement is an option.[3] The amounts of the normal and early "vested" pension benefits are tied, for example, to the participant's "Termination Date", a phrase which is defined as "the date upon which a Participant terminates his service in Covered Employment for any reason other than by death, disability or retirement." If this is a purpose of Sections 3.2 and 3.3, it could not have been intended that the right to an early or normal pension benefit would not become "nonforfeitable" or "vested" until a participant reached the ages of 55 and 60 respectively.

I thus conclude that Mr. Bencivenga's right to an early retirement pension benefit was "nonforfeitable" within the meaning of Article III when the trustees adopted Amendment 9 to the Plan. The question for decision then becomes whether, under

the Plan as properly construed, the "nonforfeitable" character of this right means that the amount of the benefit could not be reduced by amendment.

As a matter of contract interpretation, I perceive no basis for concluding that the amendment provisions of Article X of the Plan do not apply, pursuant to their literal terms, to the provisions of Article III as well as to all other segments of the Plan. While some courts have held on public policy grounds that vested pension benefits cannot be altered pursuant to a reserved right of amendment, the public policy which governs here is that expressed in ERISA. Section 402(b) of that Act, 29 U.S.C. § 1102(b), requires that "[e]very employee benefit plan shall ... provide for a procedure for amending such plan...." The ability thus afforded to adjust to changed circumstances is limited, however, by Section 204(g) and other provisions which expressly restrict use of the power of amendment[4] as well as by the right of the parties to negotiate limitations on that power. It is not for this Court to alter the balance thus struck in the name of public policy.

---

3. The summary of the Plan distributed to participants contains the following explanation of vesting:

"Vesting" is the right to receive a future pension benefit (early or normal, subject to meeting the other conditions for these benefits) if you leave the Fund. You become vested in your pension benefits after completing 10 Years of Participation.

4. For example, as Chief Judge Aldisert notes, Section 206(a) of ERISA, 29 U.S.C. § 1056(a), would foreclose an amendment which reduced Mr. Bencivenga's early retirement benefit to an

amount less than the amount of his benefit at normal retirement age actuarially reduced to reflect his early receipt of benefits. The undisputed facts of record in this case show that the challenged amendment did not have this effect. It also may be, as the trial judge suggested, that the Trustees are limited under ERISA, to utilization of the power of amendment in a "reasonable" and "non-arbitrary" manner. *See* 29 U.S.C. § 1104(a). I agree with the trial judge, however, that the undisputed facts of record demonstrate that the Trustees met these standards.