David A. NOBERS, Individually, and on Behalf of Himself and all Others Similarly Situated, Plaintiffs,

v.

CRUCIBLE INC. 1975 SALARIED RETIREMENT PLAN, Defendant.

Civ. A. No. 88–1237.

United States District Court, W.D. Pennsylvania.

June 21, 1990.

James J. Aheran, Ligonier, Pa., for plaintiffs.

Peter D. Post, William H. Powderly, John D. Goetz, Jones Day Reavis & Pogue, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

The instant matter is before the Court on a motion to dismiss plaintiffs' amended complaint. The facts in this case and the claims asserted in Plaintiffs' amended complaint are identical to those decided in favor of the Plan in *Ashenbaugh v. Crucible Inc. 1975 Salaried Retirement Plan*, 1987 WL 108960 (No. 86–1571, W.D.Pa. Sept. 25, 1987), *aff'd*, 854 F.2d 1516 (3d Cir.1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1019, *pet. for rehearing denied*, 492 U.S. 932, 110 S.Ct. 12, 106 L.Ed.2d 627 (1989). In a memorandum opinion filed at the same case number, this Court previously concluded that early retirement benefits are not "accrued benefits" within the meaning of ERISA. *Ashenbaugh*, 854 F.2d at 1526. The sole issue remaining in this case is whether, prior to the enactment of the Retirement Equity Act of 1984 (REA), Pub.L.No. 98–397, 98 Stat. 1426, unreduced early retirement benefits constituted "liabilities" within the meaning of § 4044(d)(1)(A) of ERISA, 29 U.S.C. § 1344(d)(1)(A). For the reasons stated within, we conclude that the benefits at issue in the instant case are not "liabilities" within the meaning of § 4044 of ERISA. Accordingly, we shall dismiss Plaintiffs' amended complaint.

## I.

The facts of this case concern events that occurred in 1982 at the Crucible Inc. ("Crucible") plant in Midland, Pennsylvania. In 1982, Crucible was a wholly owned subsidiary of Colt Industries, Inc. ("Colt"). The Defendant Plan at issue in this case is a single-employer plan sponsored by Crucible for salaried, non-union individuals employed within its steel operations, including the Midland plant.

In 1982, Colt closed the Midland facility, resulting in the termination of a great number of employees. The Internal Revenue Service ruled that the Plan was partially terminated effective July 31, 1982. The Plan administrator provided participants with benefits based on their age and service at the time of separation from employment.

David Nobers subsequently filed a complaint and amended complaint in this Court, claiming entitlement to unreduced early retirement benefits in that they are allegedly "liabilities" as referred to in Plan Article 12(d) [1] and in ERISA § 4044(d)(1)(A), which must be satisfied before amounts remaining in the Trust may be returned to the Company. Plaintiffs' complaint alleges a class action. The Class consists of salaried employees of Crucible whose employment was terminated as a result of the Midland plant shutdown in 1982, who were participants in the defendant Plan at the time, who at termination had less than 30 years of service, and who were credited by the defendant Plan only with an interest in the Plan's age–65 pension benefit, rather than with an interest in the Plan's Thirty Year Retirement which Plaintiffs allege they had accrued as of the Plan's partial termination.

## II.

Congress enacted ERISA in 1974. Title IV covers the termination of private pension plans, requiring that plan assets be distributed to participants in accordance with a six-tier allocation scheme set forth in § 4044(a), 29 U.S.C. § 1344(a). Title IV also establishes a system of insurance for the benefits provided by private pension plans, and creates a "body corporate", the Pension Benefit Guaranty Corporation (PBGC), to administer the system. The PBGC is a wholly-owned United States government corporation established by § 4002 of ERISA, 29 U.S.C. § 1302, to ad-

1. Article 12 of the Plan, "Termination of Plan," provides in subparagraph (d) that: "Any amount remaining in the Trust after the full satisfaction of all liabilities under the Plan shall be returned to the Company."

minister and enforce the provisions of Title IV of the statute. Amicus Curiae Brief of PBGC p. 1.

ERISA § 4044(a) provides that in the case of termination of a single employer defined benefit plan, plan administrators must first distribute nonforfeitable benefits guaranteed by the PBGC, 29 U.S.C. §§ 1344(a)(1)–(4). The Statute defines nonforfeitable benefits as those for which a participant has satisfied the conditions for entitlement under the plan or the requirements of the Statute. 29 U.S.C. § 1301(a)(8). If the plan assets are insufficient to cover the benefits listed in categories 1–4, then the PBGC will fund the difference. § 1362. The final two categories of ERISA § 4044(a) require that plan administrators then distribute "all other nonforfeitable benefits under the plan," § 1344(a)(5); and finally "all other benefits under the plan." § 1344(a)(6). If any funds remain after "all liabilities of the plan to participants and their beneficiaries have been satisfied," they may then be recouped by the Company. § 1344(d)(1)(A).

Section 401(a)(2) is the Internal Revenue Code counterpart to § 4044(d)(1)(A) of ERISA. It provides that favorable tax treatment of the plan is conditioned on satisfaction of "all liabilities with respect to employees and their beneficiaries under the [plan]" before plan assets may be diverted to others. 26 U.S.C. § 401(a)(2).

The Supreme Court has noted that "§ 4044(a) is a distribution mechanism and not a source for new [benefit] entitlements" at plan termination. *Mead Corp. v. Tilley*, 490 U.S. 714, 109 S.Ct. 2156, 2162, 104 L.Ed.2d 796 (1989). It is a mere allocation system which "provides for the orderly distribution of plan assets required by the terms of a defined benefit plan or other provisions of ERISA." *Id.* 109 S.Ct. at 2163. The PBGC's *amicus curiae* brief filed with the Fourth Circuit in the remand of *Mead v. Tilley* states, the "PBGC has, since its inception, construed the 'liabilities' that must be satisfied under section 4044(d)(1)(A) to be coextensive with the benefits included in the six priority categories in section 4044(a)." PBGC Brief at p.

6. Thus, if a benefit is not required to be assigned to one of the allocation categories under § 4044(a)(1)–(6), "there can be no liability for that benefit under section 4044(d)(1)(A)." *Id.* at p. 7. Plaintiffs' expectations of early retirement subsidies do not establish "liabilities" within the meaning of § 4044(d)(1)(A) unless all the conditions for entitlement to such benefits were satisfied on the date of plan termination. Because Plaintiffs in the instant case did not satisfy the age and service requirements of the plan in order to entitle them to the early retirement subsidies, the benefits do not exist. Plaintiffs' expectations of the subsidies cannot constitute a basis for establishing "liabilities" under the Plan which must be satisfied upon partial termination. The fiduciaries of a pension plan are not authorized to "disregard the express provisions of the Plan because the employment relationship has had a shorter duration than the employee may have hoped for." *Ashenbaugh*, 854 F.2d at 1529.

### III.

On remand of *Mead v. Tilley* to the Fourth Circuit Court of Appeals of the question whether unreduced early retirement benefits may be "liabilities" within the meaning of section 4044(d)(1)(A), the Supreme Court directed that "in deciding these issues, the Court of Appeals should consider the views of the PBGC and the IRS. For a court to attempt to answer these questions without the views of the agencies responsible for enforcing ERISA, would be to 'embar[k] upon a voyage without a compass.'" *Mead v. Tilley*, 109 S.Ct. at 2164 (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980)).

The views of the PBGC are entitled to considerable deference in that it is the agency charged with implementing and administering Title IV. The Supreme Court has stated that "[a] reviewing court is also to be guided by the 'venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indica-

tions that it is wrong.'" *E.I. du Pont de Nemours & Co. v. Collins,* 432 U.S. 46, 55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977) (quoting *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969)).

The PBGC's *amicus brief* in the *Mead v. Tilley* case states that "it is the long-standing practice under section 4044—that the benefits in issue here were not treated as accrued benefits on termination and were not termination liabilities—was articulated early in the agency's existence and continued unchanged until after the law was amended in 1984." PBGC Brief at p. 5. The PBGC's position on Plaintiffs' claims in the instant case is set forth in its March 5, 1990 letter to this Court supplementing its *amicus curiae* brief in *Mead v. Tilley.* In that letter the PBGC states:

> the "liabilities" referred to in Section 4044(d)(1) of ERISA are coextensive with the benefits under a plan that must be allocated, upon plan termination, to one of the six categories under Section 4044(a). Unearned early retirement benefits, *i.e.,* those benefits for which the participants have not met all age and service requirements at the date of plan termination (or in this case partial termination), are not required to be allocated under Section 4044(a). This result is fully consistent with the well-settled principle that plan termination fixes the rights of plan participants and ends the accrual of additional vested pension rights. Thus after termination, employees no longer have a justifiable expectation of continued benefit accrual. Accordingly, the value of the unearned early retirement subsidy is not a termination liability under ERISA.

PBGC Supplemental Letter, p. 2. (Citations omitted).

The PBGC leaves little doubt as to its position on the status of unearned early retirement benefits at plan termination when it states in its *amicus* brief in the *Mead v. Tilley* case:

> the PBGC did not include early retirement subsidies as "accrued benefits" within category six at plan termination.

Therefore PBGC did not require the payment or contingent annuitization of such benefits as liabilities under section 4044(d)(1)(A) before a reversion of residual assets. Nor did the Internal Revenue Service ("IRS") require the payment of such benefits at termination as liabilities within the meaning of section 401(a)(2) of the Internal Revenue Code.

PBGC Brief at pp. 8–9. (Citations omitted).

## IV.

Plaintiffs argue that because unreduced early retirement benefits were computed and allowed for in the funding of the Plan, they are "liabilities" under section 4044(d)(1)(A).

We disagree. It does not follow that because a plan actuary anticipates, for funding computations, that a number of individuals will become eligible for the early retirement subsidies, they somehow become "liabilities" under section 4044(d)(1)(A). As was observed by Defendant in its brief, an actuary makes the same funding decisions for death benefits and such benefits are obviously not "liabilities" upon plan termination. Defendant's Brief at p. 15. Thus, there is no one to one correlation between the computational considerations in funding a plan and the legal liabilities that must be satisfied upon plan termination. Because projected benefits are currently funded by the plan is no indication that any specific benefit will ever come into being with any particular individual. Plaintiffs' employment has been terminated, they have not satisfied the age and service requirements of the plan in order to qualify for the early retirement subsidies, and their mere expectations do not create a liability under ERISA. Accordingly, Plaintiffs' argument must be rejected.

Plaintiffs also argues that the history of the governing regulations and related revenue rulings on this issue demonstrate the status of early retirement benefits as "plan liabilities." It is argued that a definition of "normal retirement age" as stated in the cited Revenue Rulings is somehow satisfied by Plaintiffs, thereby requiring that early

retirement subsidies become nonforfeitable upon plan termination. Plaintiffs further assert that to allow these retirement subsidies to revert to the employer results in a windfall reversion to the plan's sponsor of funds which had been deposited as tax exempt contributions.

Plaintiffs embark on an analysis of the Code and Revenue Rulings from years past, which shed little light on the question of why they should be entitled to early retirement benefits under ERISA § 4044(d)(1)(A) without having satisfied the conditions for such benefits under the plan. ERISA contains a clear definition of "normal retirement age" which does not require elaboration or clarification from the Revenue Rulings cited by Plaintiffs. ERISA § 3(24), 29 U.S.C. § 1002(24). The plan also defines normal retirement age as the first day of the calendar month following the Participant's attainment of age sixty-five. Thus, ERISA has its own definition of normal retirement age, and has not incorporated the Revenue Rulings' definition. The normal retirement age in the instant case, age 65, does not involve the early retirement subsidies at issue here. Neither ERISA nor the Plan support Plaintiffs' position that expectations of early retirement subsidies qualify as normal nonforfeitable retirement benefits upon plan termination.

Additionally, Plaintiffs' argument concerning a windfall reversion to Defendant is disputed. Defendant claims such an argument is without merit in that there has been no reversion in the instant case since the plan has been only partially terminated. Defendant asserts that the Plan sponsor has not sought at any time to recoup any residual or excess assets in the Plan, and both before and after July 31, 1982, assets of the defendant Plan have been held for the exclusive benefit of its beneficiaries and participants under the terms of the trust that form a part of the defendant Plan.

Further, Plaintiffs argue that Code § 411(d)(3), the successor provision to Code § 401(a)(7), provided that a trust was not to be considered a qualified trust unless the plan provided that, upon its termination, the rights of all employees to benefits accrued to the date of such termination, to the extent then funded, to the amounts credited to the employees' accounts, are nonforfeitable.

Again, this argument must fail in that the cited Code sections do not transform Plaintiffs' expectations to early retirement subsidies into "liabilities" under ERISA section 4044(d)(1)(A). The conditions precedent to the creation of such rights, the age and service requirements, have not been satisfied, and § 411(d)(3) is a vesting provision only. *Ashenbaugh*, 854 F.2d at 1525.

Finally, Plaintiffs argue that the legislative history of the 1984 Retirement Equity Act demonstrates a Congressional intent to protect rather than nullify previously effective pension rights. We find that Plaintiffs' argument based on the REA legislative history must fail. REA applies only to plan amendments occurring on or after July 30, 1984. The instant case deals with a partial termination of a plan in 1982. Thus, the REA and its legislative history would appear to be inapplicable to the instant case. REA does not effect the unfulfilled requirements in this case for entitlement to benefits upon plan termination. Such benefits will only accrue after satisfaction of the age and service conditions which would give rise to them. The Third Circuit Court of Appeals noted that Congress had amended ERISA § 204(g), 29 U.S.C. § 1054(g), to include early retirement benefits as protected accrued benefits for plan years beginning after December 31, 1984. *Bencivenga v. Western PA Teamsters and Employers Pension Fund*, 763 F.2d 574, 577 n. 3 (3d Cir.1985). The Court went on to say that the amendment does not apply to plan years before January 1, 1985, and "the Act's legislative history states that 'no inference is to be made on the basis of this clarification as to the scope of the [§ 1054(g) ] prohibition before the effective date of the provision.'" *Id.* (citing S.Rep. No. 575, 98th Cong., 2d Sess. 28, reprinted in 1984 U.S.Code Cong. & Ad.News 2547, 2574). Accordingly, we find Plaintiffs' argument based on the REA legislative history to be inapplicable and without merit.

## V.

In conclusion, we find no compelling indication that the views of the PBGC are incorrect in their construction of ERISA § 4044(a). Section 4044(a) is a distribution mechanism and not a source for new benefit entitlements at plan termination. Because the age and service requirements of the plan were not met, the unearned early retirement benefits in this case are not "liabilities" under § 4044(a) of ERISA. Accordingly, because we so decide the sole issue remaining in this case, we shall grant Defendant's motion to dismiss Plaintiffs' amended complaint.

## ORDER

AND NOW, this 21st day of June, 1990, after careful consideration of defendant's Motion to Dismiss and for the reasons set forth in the accompanying Memorandum Opinion and the previous Memorandum Opinion of this Court in the above captioned case filed on September 1, 1989,

IT IS HEREBY ORDERED that defendant, Crucible Inc. 1975 Salaried Retirement Plan's Motion to Dismiss is GRANTED, and plaintiff's Amended Complaint is Dismissed with Prejudice.

Defendant's request for reasonable attorney's fees and costs incurred in defense of this action pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1) is DENIED. *See Iron Workers' Local No. 272 v. Bowen*, 624 F.2d 1255, 1265 (5th Cir.1980).