**B.E. TILLEY; David H. Wall; William L. Crotts; Chrisley H. Reed; J.C. Weddle; William D. Goode, Plaintiff—Appellant,**

v.

**The MEAD CORPORATION, Defendant-Appellee.**

No. 86–3858.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1987.

Decided April 9, 1987.

---

Clifford Lee Harrison (Spiers, Stone & Hamrick, Radford, Va., on brief), for plaintiff-appellant.

Charles J. Faruki (Kevin F. O'Neill, Smith & Schnacke, Dayton, Ohio, Bernard C. Baldwin, III, Edmunds & Williams, Lynchburg, Va., on brief), for defendant-appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and SIMONS, District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

The appellants are six former employees of The Mead Corporation. Under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001 et seq., they seek relief in the form of early retirement benefits from The Mead Corporation Salaried Retirement Plan (the Plan), which was funded entirely by employer contributions and contained a formula setting forth the specific benefits to be received by the participants upon retirement. Under the Plan, the normal retirement age was sixty-five, but under Article V § 2(b) participants with thirty years of service and of age sixty-two could retire with full benefits. In 1983 Mead terminated the Plan and paid early retirement benefits only to those employees who had met both the age and years of service standards. All other employee retirement benefits were determined actuarially as if they would have retired at age sixty-five. There was ten million dollars left in the fund after the payment of all benefits and this amount was recouped by Mead. The six plaintiffs, except W.L. Crotts [1], had each worked more than thirty years at the time the Plan was terminated, but none had reached the age of sixty-two. They claim that under 29 U.S.C. § 1344(a), which determines the allocation of plan assets upon plan termination, they are entitled to early retirement benefits and Mead is required to compensate them for loss of these early retirement benefits. We agree and reverse.

I.

In 1968, The Mead Corporation (Mead) acquired Lynchburg Foundry Company (Foundry) at which the appellants were salaried employees. The Foundry became a wholly owned subsidiary of Mead and thereafter Mead established the Plan, which was funded entirely by Mead. The appellants were covered by the Plan under which normal retirement was fixed at age sixty-five. Article V § 2(b) of the Plan allowed unreduced early retirement benefits to those employees covered by the Plan who had attained age sixty-two and had thirty years of service. It provided:

"If a Participant with thirty (30) or more years of credited Service elects to retire on or after he attains sixty-two (62) years

1. Plaintiff Crotts was employed July 1, 1955 and had 28 years and one month of company service and was 61 years of age when the Plan was terminated.

of age, he shall be entitled to [full benefits]."

In June 1983, Mead announced the Foundry had been sold to another corporation, and the following month, Mead gave notice to all salaried employees (including plaintiffs) that the Plan would be terminated August 1, 1983.

After securing approval from the Pension Benefit Guaranty Corporation, Mead made lump-sum payments to each plaintiff for all benefits Mead determined were due under the Plan. These benefits were not insubstantial and ranged from $50,800.35 for plaintiff Weddle to $87,552.03 for Mr. Crotts. These lump sum benefits were figured on a retirement age of sixty-five and the plaintiffs contend that the retirement benefits should have been determined as of the early retirement age of sixty-two (62). The difference sought by plaintiffs is determined by figuring the actuarial reduction of about five percent per year from the early retirement date of sixty-two (62) rather than from age sixty-five (65). This difference totals $56,476.92 for the six plaintiffs.

Mead contends that the following agreed facts relieve it from any further responsibility to the six plaintiffs:

(1) The sale of the Foundry did not violate ERISA;

(2) Mead had the right to amend or terminate the Plan at any time;

(3) None of the plaintiffs had attained age sixty-two (62) by the time of Plan termination;

(4) Mead never promised or guaranteed to any of the plaintiffs continued employment lasting until age sixty-two (62);

(5) Plaintiffs had no right to continued employment with Mead after termination of the Plan and sale of the Foundry;

(6) Plaintiffs had no right to continued accrual of benefits after Plan termination;

(7) Each plaintiff conceded that he had no facts to indicate Mead acted in bad faith with regard to the calculation and/or distribution of benefits under the Plan.

The Plan retained ten million dollars in funds after payment of all the benefits (excluding the early retirement benefits). Mead recouped these remaining plan assets.

The district court granted summary judgment in favor of Mead on the grounds that the early retirement benefits were not "accrued benefits" under ERISA because the appellants individually had not reached the requisite age and service-years standard established in the Plan. On appeal, the appellants argue that contingent early retirement benefits are a "benefit" which must be distributed upon plan termination.

## II.

When a plan is terminated the order of priority of participants and beneficiaries is set forth in ERISA § 4044(a), 29 U.S.C. § 1344(a) which provides in part:

In the case of the termination of a single-employer defined benefit plan, the plan administrator shall allocate the assets of the plan (available to provide benefits) among the participants and beneficiaries of the plan in the following order:

. . . . .

(5) Fifth, to all other nonforfeitable benefits under the plan.

(6) Sixth, to all other benefits under the Plan.

It is obvious from these two sections that there is a difference between "nonforfeitable benefits" and "all other benefits under the Plan". In a persuasive opinion, the Second Circuit in *Amato v. Western Union International, Inc.*, 773 F.2d 1402, 1414–16 (2nd Cir.1985), held that this "category six" included early retirement benefits, even if those benefits were not accrued at the time of termination. The court pointed to the legislative history applicable to § 4044:

The Joint Explanatory Statement of the Senate-House Conference Committee on the history of ERISA § 4044 supports appellants' argument that category six is not limited to accrued benefits. H.Conf. Rep. No. 1280, 93d Cong., 2d Sess., re-

printed in 1974 U.S.Code Cong. & Ad. News, 5038, 5154-55. The House version of the bill included among the benefits for which funds had to be allocated a category entitled "other accrued benefits." The Conference rejected this version and substituted "all other benefits under the Plan," the language of the present statute. Congress thus decided not to limit the allocation requirement to accrued benefits but to require that, as long as assets were available, they should be used to meet participants' benefit expectations based upon the Plan's full benefit structure.

773 F.2d at 1416.

Pension plans are usually submitted to the Internal Revenue Service to be sure that the corporate contributions to such plans are deductible in determining the taxable income of the corporation. The Internal Revenue Code, 26 U.S.C. 401 *et seq.*, sets forth the requirements for qualification of pension plans and Treasury Regulations relating to such plans are found in the Code of Federal Regulations. 29 C.F.R. § 2618.16 (1984) provides:

"The benefits assigned to priority category 6 with respect to each participant are all of the participant's benefits under the plan, whether forfeitable or nonforfeitable."

■ There is a strong presumption in favor of the validity of Treasury Regulations.

[E]ver since the inception of the Tax Code, Congress has seen fit to vest in those administering the tax laws very broad authority to interpret those laws. In an area as complex as the tax system, the agency Congress vests with administrative responsibility must be able to exercise its authority to meet changing conditions and new problems.

*Bob Jones University v. U.S.*, 461 U.S. 574, 596, 103 S.Ct. 2017, 2031, 76 L.Ed. 57 (1983).

Mead argues that our decision in *Sutton v. Weirton Steel Division of National Steel Corporation*, 724 F.2d 406 (4th Cir. 1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984), controls the outcome of this case. In *Sutton*, we held "the accrued benefits secured by ERISA do not encompass unfunded, contingent early retirement benefits or severance payments. The Act was not designed to prohibit modification of these ancillary benefits." 724 F.2d at 410.

■ We do not find *Sutton* controlling. The present case, unlike *Sutton*, does not involve the question of the employer's right to modify early retirement benefit in an unfunded scheme of pension and severance benefits contained in a collective bargaining agreement. We are faced with the termination of an employer funded, defined pension plan which contains early retirement benefits, which plan was terminated resulting in recoupment by the employer of ten million dollars. The application of category six of ERISA § 4044 is controlling in our case, but it was not relevant to or mentioned in *Sutton*.

It is clear from the language of the statute, the general legislative history and the interpretation given to it by the Internal Revenue Service that the present plaintiffs are entitled to the early retirement benefits they seek.

■ In determining the amounts due to each of the plaintiffs, Mead excluded from consideration early retirement benefits and reduced the amount received by each plaintiff by an amount equal to roughly five percent per year that the individual was in age short of age sixty-five. The plaintiffs, except Crotts, were entitled to have early retirement benefits considered in determining the amount of their lump sum retirement payment. The correct computation of the benefit should have been determined by reducing each plaintiff's benefit from age sixty-two, except Crotts whose benefits would be computed using age sixty-four, since Crotts would not complete thirty years of service until that age. In other words, the early retirement age benefits should be determined by figuring the actuarial reduction of five percent per year from the early retirement age of the plaintiff, rather than from age sixty-five.

We reverse the decision of the district court, and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Harrison J. Winter, Chief Judge, concurred and dissented and filed an opinion in which James Dickson Phillips and Ervin, Circuit Judges, joined.