**AMERICAN STORES COMPANY, a Delaware corporation, William B. Coon, an individual, and John P. Stransky, an individual, Plaintiffs,**

v.

**AMERICAN STORES COMPANY RETIREMENT PLAN and American Stores Company Benefit Plans Committee, Defendants.**

No. 86–C–0542J.

United States District Court,
D. Utah, C.D.

May 22, 1989.

Craig R. Mariger, Jones Waldo, Holbrook & McDonough, Salt Lake City, Utah, and Martin C. Washton, David West and David P. Restaino, Gibson, Dunn & Crutcher, Los Angeles, Cal., for plaintiffs.

David E. Salisbury, David A. Greenwood and Steven D. Woodland, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendants.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

The matter before the court on cross-motions for summary judgment is whether the elimination of the "Rule of 80 Pension," an early retirement provision, from the defendant pension plan, was permissible under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1368 (1974, as amended) and the relevant provisions of the Internal Revenue Code ("I.R.C."), 26 U.S.C. § 401 (1954, as amended). Arguments on the motions for summary judgment were heard on September 9, 1988, at which time the court took the matter under advisement. The court agrees with the parties that there exist no material issues of fact concerning the question to be decided here. The court has determined that summary judgment is proper. The court now grants the defendants' motion for summary judgment on the grounds that the elimination of the Rule of 80 from the retirement plan was an impermissible reduction of accrued benefits within the meaning of ERISA and the relevant portions of the I.R.C.

The plaintiff American Stores Company ("ASC") is a Delaware corporation with its principal place of business in Salt Lake City, Utah. The plaintiff William B. Coon is a Senior Vice–President of American Stores Management Systems Company, and the plaintiff John P. Stransky is an employee of Skaggs Alpha Beta, Inc., both wholly owned subsidiaries of the plaintiff ASC. The defendant American Stores Retirement Plan ("Plan") is a pension plan created by ASC on or about December 1, 1946. From 1974 until its termination on December 31, 1984, the Plan was to be maintained in accordance with ERISA and section 401 *et seq.* of the I.R.C. The defendant American Stores Company Benefit Plans Committee ("Committee") is a committee charged with the administration of the defendant Plan.

The Parties agree as to the following facts. Prior to August of 1981 the Plan contained two different retirement provisions, the "Normal Retirement Pension" and the "Early Retirement Pension." Under the Normal Retirement Pension, one's pension began the first day of the month following the member's sixty-fifth birthday. It was defined in Article 1.16 of the Plan as:

a monthly pension determined at the Member's Normal Retirement Date payable for the lifetime of a Member equal to the Accrued Monthly Pension less the Other Pension, if any.[1]

Under the Early Retirement Pension employees having ten years of service with the company who terminated employment after reaching age fifty-five could retire but would receive benefits which were actuarially reduced. Article 1.10(b) of the Plan defined one's benefit under this provision as:

(i) the Member's Accrued Monthly Pension less the Member's Other Pension, if any, payable on the first day of the month following the later of the Member's 62nd birthday and the Member's Termination of Employment Date, or

(ii) at the election of the Member, a reduced monthly pension payable beginning on the first day of any month after the Member's Termination of Employ-

---

1. Article 1.01 of the Plan, defines "Accrued Monthly Pension" as:

the product of the Member's Benefit Service up to a maximum of 35 years and the greatest of:

(a) 1½% of the Member's Plan Compensation, less 1¾% (1.42871%) of the Member's Primary Social Security Benefit, and b) 1.2% of that amount of the Member's Plan Compensation

which is not in excess of $1,250, and
(c) $5.00....

Article 1.17 of the Plan defines "Other Pension" as the benefit the participant has earned under another defined benefit plan during the years of benefit service used to determine the participant's Accrued Monthly Pension.

ment Date up to and including the Member's Normal Retirement Date, with the amount of such pension equal to the Member's Accrued Monthly Pension reduced by ½% for each month that the commencement date of such pension precedes the first day of the month following the Member's 62nd birthday, less the Member's Other Pension, if any.

On September 2, 1981, ASC's Board of Directors authorized the Committee to amend the Plan to incorporate a new early retirement provision, referred to as the Rule of 80 Pension, under which employees fifty-five or older whose age and years of service equalled eighty or more could retire and receive unreduced benefits. This provision became effective as of October 1, 1981, and first appeared in the Plan on August 1, 1982, as follows:

> [A]n "Early Retirement Rule of 80 Pension," which in the case of each Member whose Termination of Employment Date for a reason other than the death of the Member occurs on or after the Member's 55th birthday and before the month in which the Member's 62nd birthday falls and the sum of whose attained age and full years of Benefit Service at such date is 80 or more, is a monthly lifetime pension equal to the Member's Accrued Monthly Pension less the Member's Other Pension, if any. . . .

Article 1.10(a) of the Plan. The Rule of 80 was calculated by the same formula as was the Normal Retirement Plan set forth in Article 1.16: "Accrued Monthly Pension less the Other Pension, if any."

The Rule of 80 Pension remained an available option until 1985. Approximately March 7, 1984 ASC sent notice to its employees announcing the termination of the Rule of 80 Pension for those qualifying after February 2, 1985.[2] Effective January 1, 1985 the entire Plan was terminated and was replaced with a profit-sharing plan pursuant to section 401(k) of the Internal Revenue Code. In connection with the termination of the Plan, ASC's actuaries calculated the benefits earned by employees to December 31, 1984. This calculation did not include any benefits attributed to the Rule of 80 Pension for employees who were not fifty-five and qualifying as of February 2, 1985. If the value of the Rule of 80 Pension had been included, Plan participants would be entitled to an additional $33,000,000 in benefits.

### I.

The portions of ERISA in effect at the time of the termination and relevant to this case are as follows. Section 204(g) of ERISA states:

> "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in Section 302(c)(8) or 4281."

29 U.S.C. § 1054(g) (1980).[3] The exceptions stated in this provision are not applicable in this case. "Accrued benefit" is defined in section 3(23) of ERISA, which states:

> The term accrued benefit means—
>
> "(A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as pro-

---

**2.** On February 9, 1984, the Committee adopted a recommendation to amend the Plan to delete the Rule of 80 Provision for anyone qualifying after February 2, 1985. The action of the Committee was unanimously approved by the ASC Board of Directors on March 13, 1984. Subsequently ASC asked its attorneys to draft an amendment to the Plan in order to delete the Rule of 80 Pension. The first amendment was delivered to ASC on June 1, 1984 but was backdated to March 12, 1984 to coincide with the March 13, 1984 board of directors meeting. In September of that year, however, it was discovered that the first amendment failed to provide that an employee qualify by February 2, 1985, so a second amendment was prepared. The

Plan itself was then amended and restated on July 29, 1985 but made effective January 1, 1984 to incorporate the second amendment.

**3.** The Internal Revenue Code was amended to reflect ERISA, adding similar provisions to be satisfied in order for a pension plan to be treated favorably for tax purposes. For example, I.R.C. § 411(d)(6) states: "A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan, other than an amendment described in Section 412(c)(8), or Section 4281 of the Employee Retirement Income Security Act of 1974."

vided in Section 204(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age...."

29 U.S.C. § 1002(23) (1974). *See also* I.R.C. § 411(a)(7)(A)(i) [4].

The issue in this case is whether the Rule of 80 Pension is an "accrued benefit" within the meaning of sections 204(g) and 3(23) of ERISA and the corresponding provisions of the I.R.C. The plaintiffs argue that the Rule of 80 is not an accrued benefit because in order to be "accrued" within the meaning of the statute a benefit must commence at age 65 or, if payable earlier, be determined as the actuarially reduced equivalent of the amount one is entitled to at age sixty-five. The plaintiffs contend that the Rule of 80 is a supplemental early retirement benefit in excess of a benefit "expressed in the form of an annual benefit commencing at normal retirement age" because it is not the actuarially reduced equivalent of the Normal Retirement Pension; therefore, they argue, it is not "accrued." The defendants, on the other hand, argue that the Rule of 80 Pension is an "accrued benefit" because it is calculated by the same formula as the Normal Retirement Pension and is thus "expressed in the form of an annual benefit commencing at normal retirement age." At issue then, is the interpretation to be given this inherently ambiguous phrase—"expressed in the form of" can mean either "must be" or "must be similar to."

## II.

The plaintiffs urge the court to adopt the reasoning set forth in *Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund*, 763 F.2d 574 (3d Cir.1985). *Bencivenga* concerned a fifty-two-year-old plaintiff who retired in March of 1979 after twenty-nine years of working

for Morris Paper Company. At age fifty-five Bencivenga was eligible for early retirement benefits. Under the terms of the pension plan in effect in March 1979, when he retired, his anticipated early retirement pension was $440.00 per month. On November 26, 1979, however, the plan was amended to increase the discount factor each month for participants retiring before age sixty. The reason given for this amendment was to insure that the benefits paid to those taking early retirement were equal to benefits paid those who took normal retirement. Because of the amendment, when Bencivenga began receiving his pension at age fifty-five, he discovered that he only received $319.00 per month rather than the $440.00 per month that he would have received before the amendment. Bencivenga brought an action against the fund alleging that the reduction was impermissible under ERISA. The district court granted the fund's motion for summary judgment on the grounds that early retirement benefits are not "accrued benefits" under the act. The court of appeals affirmed.

In reaching its decision the Third Circuit looked "first to the plain language of the statute." 763 F.2d at 577. While noting that section 204(g) of ERISA and its counterpart in the Internal Revenue Code prohibited the reduction of accrued benefits, after looking at the definition of accrued benefits and of normal retirement age set forth in ERISA § 1002(23) and (24) respectively, the court concluded that "in the context of 'accrued benefits,' ERISA's specific reference is to normal, rather than early, retirement." *Id.* The court then stated that "legislative history also indicates that the Act was not intended to assure the sanctity of early retirement expectations," *Id.*, and cited a portion of the

---

**4.** Section 204(c)(3) of ERISA in turn states:
For purposes of this section, in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, or if the accrued benefit derived from contributions made by an employee is to be determined with respect to a benefit other than an annual

benefit in the form of a single life annuity (without ancillary benefits) commencing at normal retirement age, the employee's accrued benefit, or the accrued benefits derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount determined under paragraph (1) or (2).

House Report found in the legislative history of ERISA which states:

The term "accrued benefit" refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits.... To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income.... Also, the accrued benefit to which the vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age....

H.R.Rep. No. 807, 93d Cong., 2d Sess. 57, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4670, 4726.

The Third Circuit then found that "case law also supports the conclusion that early retirement benefits are not accrued benefits under ERISA," *id.,* and cited *Sutton v. Weirton Steel,* 724 F.2d 406 (4th Cir.1983). The court then concluded that,

[b]ased on *Sutton* and other cases, i.e., *Hernandez v. Southern Nevada Culinary & Bartenders Pension Trust,* 662 F.2d 617, 619 (9th Cir.1981) ..., and *Petrella v. NL Industries, Inc.,* 529 F.Supp. 1357, 1365–66 (D.N.J.1982) ..., the district court in this case properly determined that the "weight of authority is that early retirement benefits are not considered 'accrued benefits' under ERISA."

763 F.2d at 578.

The Third Circuit then noted, however, the existence of two relevant Treasury Department regulations, one of which could not be reconciled with the court's position. Regulation 1.411(a)–7(a)(1)(ii) states:

In general, the term "accrued benefits" refers only to pension or retirement benefits. Consequently, accrued benefits do not include ancillary benefits not directly related to retirement benefits.... For purposes of this paragraph a subsidized early retirement benefit which is provided by a plan is not taken into account, except to the extent of determining the normal retirement benefit under the plan....

26 C.F.R. § 1.411(a)–7(a)(1)(ii) (1977), *quoted in* 763 F.2d at 579. The court found the early retirement benefit to be a subsidy. By so doing it was then able to find regulation 1.411(a)–7(a)(1)(ii) consistent with its own position that unreduced early retirement benefits are not "accrued benefits" within the meaning of the protection of ERISA.

The next regulation, however, was more difficult to reconcile. Regulation 1.411(d)–3(b), issued in 1977 and codified in 1984, construes the Internal Revenue Code equivalent of ERISA § 204(g)—I.R.C. § 411(d)(6). It states:

(b) *Prohibition against accrued benefit decrease.* Under section 411(d)(6) a plan is not a qualified plan (and a trust forming a part of such plan is not a qualified trust) if a plan amendment decreases the accrued benefit of any plan participant.... For purposes of determining whether or not any participant's accrued benefit is decreased, all the provisions of a plan affecting directly or indirectly the computation of accrued benefits which are amended with the same adoption and effective dates shall be treated as one plan amendment. Plan provisions indirectly affecting accrued benefits include, for example, ... actuarial factors for determining optional or early retirement benefits.

26 C.F.R. § 1.411(d)–3(b) (1984). In dealing with this regulation the Third Circuit noted:

[T]he Internal Revenue Service has taken a broad view of the effect of Regulation § 1.411(d)–3(b) and has apparently concluded that *any* amendment causing a change in the discount factor or method of determining actuarial equivalence that has the effect of reducing the amount of early retirement benefits is prohibited as a decrease of accrued benefits....

763 F.2d at 580. It decided, however, that "unlike authorized regulations, Revenue Rulings, as interpretive actions, do not have the force of law and we need not accept the full breadth of the IRS's theory." *Id., (citations omitted ).* Thus, the court held that the early retirement plan was not an accrued benefit and that the

amendment therefore did not violate ERISA.

## III.

The defendants, on the other hand, urge the court to follow the reasoning set forth in *Amato v. Western Union International, Inc.*, 773 F.2d 1402 (2d Cir.1985), in which the Second Circuit held that a plan provision similar to the Rule of 80 Pension was an "accrued benefit" under section 204(g) of ERISA and section 411(d)(6) of the Code and could not be reduced by amendment to the Plan. This court finds *Amato's* reasoning persuasive and holds that in the case at bar the Rule of 80 Pension was an accrued benefit within the meaning of ERISA and could not be eliminated.

In *Amato* the plaintiffs were employees of defendant Western Union. In 1973 Western Union's pension plan provided for two types of retirement benefits. Under a "Class A" pension, an employee with twenty or more years of credited service would be eligible to receive full benefits at age fifty-five, while under a "Class 75" pension employees with twenty or more years of service whose age and service years equalled seventy-five (75) could retire with full benefits. In 1975 two other pensions were added in compliance with ERISA, an "Age 65" pension entitling an employee to full retirement benefits at age sixty-five and a "Deferred Vested Benefit" pension under which an employee could retire before age sixty-five on an actuarially-reduced basis. The same formula was used by Western Union to calculate the amount of benefits payable per year to an employee under the Class A, Class 75, and Age 65 pensions—one and two-thirds percent (1⅔%) times the average of the employee's three highest consecutive years' salary times the number of years of service. In January 1982 MCI acquired WUI, Inc., a holding company whose subsidiaries included Western Union. In November 1982 MCI and Western Union adopted an amendment to the Western Union retirement plan. Under this amendment the plaintiffs were no longer eligible for Class A or Class 75 benefits and could only retire under the Age 65 or the Deferred Vested Benefit pensions. The plaintiffs filed suit alleging several violations of ERISA, including the allegation that the amendment decreased the plaintiffs' accrued benefits in violation of section 204(g) of ERISA and 411(d)(6) of the I.R.C. The district court found for the defendant, but the Second Circuit reversed.

The Second Circuit in *Amato,* like the Third Circuit in *Bencivenga,* first looked at the plain language of the statutory provisions. However, whereas the Third Circuit interpreted "accrued benefit" as a benefit commencing at age sixty-five or as an actuarially reduced amount if payable earlier, the Second Circuit interpreted "accrued benefit" as a benefit "expressed in the form of an annual benefit commencing at normal retirement age," meaning that an early retirement benefit was "accrued" if the formula for determining it is the same as the formula for determining normal retirement benefits. The court held that the Class A and Class 75 benefits were accrued benefits because the same formula was used to calculate the amount of benefits per year under those pensions as was used in calculating the Age 65 pension.

This court agrees with the *Amato* court that in construing statutes "an effort should be made to give *some* reasonable meaning to the words used in a statute rather than no meaning at all," and that "[t]o interpret the statute's definition of 'accrued benefit' as referring only to the *'amount'* of money payable at normal retirement age would read out of 29 U.S.C. § 1002(23) the words 'in the form of' or give them no force and effect." 773 F.2d at 1408 (emphasis added). In the case at bar there is no dispute that the Rule of 80 Pension benefits were calculated by precisely the same formula as that used to calculate benefits under the "Normal Retirement" provision. The Rule of 80 Pension benefits were thus accrued benefits within the meaning of section 204(g) of ERISA and could not be eliminated by an amendment to the plan.

In reaching this decision this court agrees with the Second Circuit's finding that "the language, purpose, and legisla-

tive history of the statute" favor this construction of the statutory provision," *id.,* and that this interpretation reflects the general purpose of the statute to assure employees that they will not be deprived of the benefits they have been promised and reasonably anticipated. This court also finds persuasive the comments of Senator Williams, Chairman of the Senate Committee of Labor and Public Welfare, who remarked that a basic concern for Congress was "that a plan not be permitted to use an accrual formula ... to subvert the statutory intent to provide meaningful vested rights...." 773 F.2d 1409 (citing 120 Cong.Rec. S.15737 (daily ed. Aug. 22, 1974) (statement of Senator Williams), *reprinted in* 1974 U.S.Code Cong. & Ad.News 5177, 5180). The plaintiffs, however, urge that this interpretation is in conflict with the House Report relied upon by the court in *Bencivenga.* However, *Bencivenga* took the passage out of context; the full passage is inapplicable because it does not refer to early retirement benefits in general but to benefits of a temporary or ancillary nature.[5] 773 F.2d at 1410.

Since the legislative history was silent as to the specific sections of ERISA under consideration, the *Amato* court, rather than limiting its analysis to a single House Report as did the Third Circuit, looked to the legislative history of the 1984 amendments to ERISA, the Retirement Equity Act of 1984 ("REACT"), to discover the intent of Congress. It noted the 1984 amendment of section 204(g) which states:

(2) For purposes of paragraph (1), a plan amendment which has the effect of—
(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
(B) eliminating an optional form of benefit,
with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

29 U.S.C. § 1054(g) (1984). This court agrees with the *Amato* court's interpretation of the amendment as not changing or adding to the applicable ERISA statute but as clarifying and fortifying it and finds persuasive the example contained in the House and Senate Committee reports accompanying the revised section 204(g). The example describes a plan similar to the Class A and 75 pensions in *Amato* and to the Rule of 80 in this case and states that under such a plan the eligible employee has an "accrued benefit." S.Rep. No. 575, 98th Cong., 2d. Sess. 29; *reprinted in* 1984 U.S. Code & Ad.News 2547, 2575. The House Committee Report adds that this accrued benefit, *"as under prior law,"* cannot be reduced, and the report of the House Committee on Ways and Means states that "[t]he bill codifies present law generally precluding the elimination or reduction of benefits that have already been accrued by employees." H.R.Rep. No. 655, Pt. 2, 98th Cong., 2d Sess. 25–26, 26–27 (1984).

The plaintiffs in the case at bar argue that the House Reports are contradicted and overridden by the Senate Finance Committee's statement that "no inference is to

---

**5.** The entire passage is cited in *Amato* and reads as follows (the underlined portions are those quoted in *Bencivenga*):

"In the case of a defined benefit plan the bill provides that the accrued benefit is to be determined under the plan, subject to certain requirements. The term 'accrued benefit' refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits, such as medical insurance or life insurance, which are sometimes provided for employees in conjunction with a pension plan, and are sometimes provided separately. To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income. Also, where the employee moves from one employer to another,

the ancillary benefits (which are usually on a contingency basis) would often be provided by the new employer, whereas the new employer normally would not provide pension benefits based on service with the old employer. Also, the accrued benefit to which the vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age, or so-called social security supplements which are commonly paid in the case of early retirement but then cease when the retiree attains the age at which he becomes entitled to receive current social security benefits, or any value in a plan's joint and survivor annuity provisions to the extent that exceeds the value of what the participant would be entitled to receive under a single life annuity."

be made on the basis of this clarification as to the scope of the prohibition before the effective date of the provision." *id.* The Second Circuit in *Amato*, however, took the silence of the Senate on this latter matter as simply reflecting its desire to avoid interfering with ongoing litigation. This court agrees.

Finally, this court finds the Second Circuit's interpretation of the statutory language more consistent with the relevant Treasury Department rulings. Like the Third Circuit in *Bencivenga*, the Second Circuit also found its own interpretation of accrued benefit as "not inconsistent" with Treasury Regulation 1.411(a)(7)–(a)(1). It noted that the regulation only excluded "subsidized" early retirement benefits and noted that "subsidized early retirement benefit" was not defined in the I.R.C., the regulations, ERISA, or the plan. The court regarded it as significant that Congress had provided in REACT that " 'early retirement benefit' and 'retirement-type subsidy' be 'defined in the regulations.' " Thus, whereas the Third Circuit interpreted all early retirement benefits as subsidized, the Second Circuit, did not, and absent a clear definition of "subsidized" early retirement benefits, declines to exclude the Class A and 75 plans from the category of "accrued benefits." 773 F.2d at 1413. Similarly, the exclusion of "subsidized early retirement benefits" from the category of accrued benefits in this case does not mean that the Rule of 80 is not an accrued benefit.

The Second Circuit's interpretation of the statutory provision makes even more sense when read in light of the other relevant Treasury Regulation, 1.411(d)–3(b). While the *Amato* court found its interpretation entirely consistent with this regulation, the Third Circuit in *Bencivenga* found that its own interpretation conflicted with it, and rather than reconciling the two, could only comment that it "need not accept the full breadth of the IRS's theory." 763 F.2d at 580.[6] In reaching their decisions the Sec-

ond and Third Circuits each considered the plain language of the statute, its legislative history, and the applicable decisional law and revenue regulations, yet they arrived at different conclusions. The *Amato* court held that the *Bencivenga* decision was "clearly distinguishable" from the situation with which it dealt, for it "simply assured that employees qualifying for actuarially-reduced early retirement benefits would not receive pensions of greater actuarial value than those received at normal retirement age." 773 F.2d at 1413.

*Amato* found distinguishing features that this court does not find. After considering the reasoning of the Third Circuit in *Bencivenga* and of the Second Circuit in *Amato*, this court finds the reasoning of *Amato* more consistent with the legislative intent as expressed in the statute, the legislative history and the regulations applying the statute. It therefore adopts the reasoning of the Second Circuit in *Amato*. *See also Tilley v. Mead*, 815 F.2d 989 (4th Cir.1987); *Collins v. Seafarers Pension Trust*, 641 F.Supp. 293 (D.Md.1986), dismissed on other grounds 660 F.Supp. 386 (D.Md.1987).

### IV.

The plaintiffs argue that even if the court finds *Amato* more persuasive, that case is distinguishable from the case at bar. They argue that the Class A and Class 75 pensions in *Amato* were in place longer than was the Rule of 80 Pension. In addition they argue that the Rule of 80 Pension was always intended to be temporary, and that any benefits expected under it were not "reasonably anticipated." The fact that the Rule of 80 Pension was in place for a shorter amount of time than the Class A and 75 provisions in *Amato* does not mean that the benefits derived from it were not reasonably anticipated. Moreover, the record is devoid of any evidence that the Rule of 80 Pension was meant

---

6. The court in *Amato* also considered a determination letter of February 15, 1985 written by the district director of the IRS in response to an inquiry from Western Union, in which the IRS states that "a plan amendment which eliminates

unreduced early retirement benefits, such as the amendment in question here, involves a change in the plan's actuarial factors that impermissibly affects accrued benefits." 773 F.2d at 1412.

from its inception to be temporary: it was open-ended, there was no expiration date, there was no mention in the Plan that the provision was meant to be temporary, nor is there any evidence of notice to the employees to that effect. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This court sees the amendment implementing the Rule of 80 Pension as creating a current entitlement for the employees. The mere fact that the entitlement it created was a payment to be made in the future after actual service by the employees for the requisite years does not mean an employee's current existing interest in early retirement can be extinguished unilaterally.

The court therefore holds that the Rule of 80 Pension was an accrued benefit under section 204(g) of ERISA which could not be eliminated. The defendants' motion for summary judgment is GRANTED, and the plaintiffs' motion for summary judgment is DENIED.

IT IS SO ORDERED. Let Judgment be entered accordingly.