AMERICAN STORES COMPANY, a Delaware Corporation; William B. Coon, an individual; and John P. Stransky, an individual, Plaintiffs–Appellants,

v.

AMERICAN STORES COMPANY RETIREMENT PLAN; American Stores Company Benefit Plans Committee, Defendants–Appellees.

No. 89–4083.

United States Court of Appeals, Tenth Circuit.

March 26, 1991.

Martin C. Washton of Gibson, Dunn & Crutcher, Los Angeles, Cal., (David E. West, David P. Restaino, and Joseph J. Bader of Gibson, Dunn & Crutcher, Los Angeles, Cal., and Craig R. Mariger of Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, with him on the briefs), for plaintiffs-appellants.

David A. Greenwood (Steven D. Woodland, with him on the brief) of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendants-appellees.

Steven S. Zaleznick, Cathy Ventrell–Monsees, and Robert L. Liebross, (William K. Carr of Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., of counsel), filed a brief for amicus curiae, American Ass'n of Retired Persons.

Before MOORE, BRORBY, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

In this case, we consider whether the district court erred in concluding that plaintiffs-appellants, American Stores Company, William B. Coon,[1] and John P. Stransky[2]

("American Stores"), violated § 204(g) of the Employee Retirement Income Security Act ("ERISA"), Pub.L. No. 93–406, 88 Stat. 858 (codified as amended in 29 U.S.C. § 1054(g)), as that provision read prior to its amendment in 1984, by amending the American Stores defined benefit pension plan so as to eliminate the plan's unreduced early retirement benefit provision. We conclude that the unreduced early retirement benefit is not an "accrued benefit" within the meaning of ERISA and that American Stores therefore did not violate § 204(g). Accordingly, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

*Facts*

American Stores created the American Stores Company Retirement Plan ("Retirement Plan") on or about December 1, 1946. Prior to August, 1981 the Retirement Plan contained two different retirement provisions: (1) a "Normal Retirement Pension," which would take effect on the first day of the month following the plan member's 65th birthday; and (2) an "Early Retirement Pension," under which a plan member who accumulated at least ten years of service with the company and who terminated his employment after reaching age 55 could retire and receive early retirement benefits. The annual early retirement benefits were calculated by reducing the normal retirement benefit by ½% for each month that the commencement date of such pension preceded the first day of the month following the member's 62nd birthday.

On September 2, 1981, the Board of Directors of American Stores authorized defendants-appellees, American Stores Company Retirement Plan and American Stores Company Benefit Plans Committee (the Plan), to amend the Retirement Plan in order to add a special early retirement provision. Under that provision, which was known as the "Rule of 80 Pension," plan

---

1. William B. Coon is a Senior Vice–President of American Stores Management Systems Company, a wholly-owned subsidiary of American Stores.

2. John P. Stransky is an employee of Skaggs Alpha Beta, Inc., a wholly-owned subsidiary of American Stores.

members who reached a minimum age of fifty-five years and whose age and years of service totaled eighty or more became eligible to receive the full pension without any actuarial reduction for retirement prior to the attainment of age 62 (unlike the Early Retirement Pension). The Rule of 80 Pension was calculated using the same formula as the Normal Retirement Pension.

The Rule of 80 Pension became effective on October 1, 1981. On March 13, 1984, the Board of Directors of American Stores unanimously approved a recommendation to eliminate the Rule of 80 Pension from the Retirement Plan for any participant who qualified after February 2, 1985. American Stores then requested its attorneys to draft an amendment to the plan incorporating this recommendation. The amendment was delivered to American Stores on June 1, 1984, but was backdated to March 12, 1984. In September 1984, it was discovered that the amendment did not provide that an employee must qualify by February 2, 1985, in order to receive unreduced early retirement benefits under the Rule of 80 Pension. Therefore, a second amendment was drafted to correct that oversight. The Retirement Plan was accordingly revised on July 29, 1985, but the second amendment was considered effective as of January 1, 1984.[3]

American Stores terminated the entire Retirement Plan effective January 1, 1985, and replaced it with a profit-sharing plan pursuant to § 401(k) of the Internal Revenue Code. In connection with the termination of the Retirement Plan, American Stores' actuaries calculated the benefits earned by the plan members through December 31, 1984. This calculation did not take into account the benefits prescribed in the Rule of 80 Pension, except for those participants who, as of February 2, 1985, would reach age fifty-five and whose age and years of service would total at least eighty. According to the district court, "[i]f the value of the Rule of 80 Pension had been included [for the remaining plan members], Plan participants would be entitled to an additional $33,000,000 in benefits." *American Stores Co. v. American Stores Co. Retirement Plan*, 716 F.Supp. 1392, 1394 (D.Utah 1989).[4]

Prior to its amendment in August 1984, § 204(g) of ERISA provided only that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan...." 29 U.S.C. § 1054(g) (1982). The Retirement Equity Act of 1984 ("REA"), Pub.L. No. 98–397, § 301(a)(2), 98 Stat. 1426, 1451 (codified at 29 U.S.C. § 1054(g)(2)) made substantial revisions to § 204(g) of ERISA and the corresponding provisions of the Internal Revenue Code. In particular, REA provided that a plan amendment made after July 30, 1984, to "eliminat[e] or reduc[e] an early retirement benefit or a retirement-type subsidy ... with respect to benefits attributable to service [performed] before the amendment shall be treated as reducing accrued benefits." *Id.*[5]

On June 23, 1986, American Stores filed this action in the United States District Court for the District of Utah, seeking a declaratory judgment that the amendment terminating the Rule of 80 Pension did not violate § 204(g) of ERISA. American Stores argued that § 204(g) was not violated because unreduced early retirement benefits, such as the Rule of 80 Pension, are not "accrued benefits" as that term is de-

---

3. The effect of these amendments is important to a determination of when, in fact, the Rule of 80 Pension was reduced or eliminated, because it is agreed by all the parties that if the pension was reduced or eliminated *after* July 30, 1984, then it would be in violation of the Retirement Equity Act of 1984. *See infra* note 5.

4. American Stores disputes the accuracy of this amount. *See* Appellants' Reply Br. at 23 n. 5.

5. The Plan argues that the district court never resolved the issue of whether the plan was effec-

tively amended prior to July 30, 1984. Notably, American Stores in its Reply Brief did not refute this claim. Although we have carefully reviewed footnote 2 of the district court's opinion as well as the summary judgment evidence that was introduced on this issue, we are left with some doubt about this matter. In light of our conclusion that the benefits at issue are not accrued benefits, we remand to the district court to determine whether the Rule of 80 Pension was effectively eliminated by amendment prior to July 30, 1984.

fined in § 3(23) of ERISA, 29 U.S.C. § 1002(23), and, prior to REA, were not to be treated as accrued benefits. Following discovery, American Stores and the Plan moved for summary judgment. On June 7, 1989, the district court issued a written opinion granting summary judgment in favor of the Plan. The court concluded that the elimination of the Rule of 80 Pension from the American Stores Retirement Plan was an impermissible reduction of "accrued benefits" within the meaning of § 204(g) of ERISA and the relevant portions of the Internal Revenue Code. 716 F.Supp. 1392. American Stores then filed this appeal.

### Discussion

■ We review de novo the district court's order granting summary judgment, applying the same standard as the district court under Fed.R.Civ.P. 56(c). *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990). Under Rule 56(c), summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In light of the analysis described below, we conclude that the Rule of 80 Pension is not an accrued benefit under pre-REA law and that therefore the Plan is not entitled to judgment as a matter of law.

### I. *Statutory Language*

In examining the language of ERISA, the starting point is § 204(g). Prior to its amendment in 1984 by REA, § 204(g) of ERISA provided, in relevant part:

A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan....

26 U.S.C. § 411(d)(6) (1982).

ERISA defines the term "accrued benefit" as follows:

The term "accrued benefit" means—
(A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title [§ 204(c)(3) of ERISA], *expressed in the form of an annual benefit commencing at normal retirement age....*

29 U.S.C. § 1002(23) (emphasis added).

Courts have differed in their interpretations of ERISA's definition of "accrued benefit." The Third and Fourth Circuits have concluded that unreduced early retirement benefits that can be obtained before an employee reaches normal retirement age are not "accrued benefits" under ERISA.[6] *See Tilley v. Mead Corporation*, 927 F.2d 756, 759 (4th Cir.1991); *Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund*, 763 F.2d 574, 577 (3d Cir.1985).

In contrast, the Second Circuit has concluded that to interpret the definition of "accrued benefit" as referring only to the actuarially-reduced amount of money payable at normal retirement age would ignore the fact that under 29 U.S.C. § 1002(23) an accrued benefit is defined not just as a benefit payable at normal retirement age, but as a benefit " '*expressed in the form of an annual benefit commencing at normal retirement age.*' " *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1407–08 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986) (quoting 29 U.S.C. § 1002(23)) (emphasis in original). The district court in this case adopted the reasoning in *Amato* and held that the benefits under the Rule of 80 Pension are accrued. The court noted that the benefits under the Rule of 80 Pension are "expressed in the form of" benefits commencing at normal retirement age because the Rule of 80 benefits are calculated by the same formula used to calculate the normal retirement benefits under the Plan. *American Stores*, 716 F.Supp. at 1397.

---

**6.** The definition of normal retirement age in force at the time that the Rule of 80 Pension was terminated was:
(A) the time a plan participant attains normal retirement age under the plan, or
(B) the later of—
(i) the time a plan participant attains age 65, or
(ii) the 10th anniversary of the time a plan participant commenced participation in the plan.
29 U.S.C. § 1002(24) (1982).

■ We adopt the position taken by the Third and Fourth Circuits. Courts should attempt to give some reasonable meaning to all of the words included in a legislative enactment. *See Amato,* 773 F.2d at 1408. *See also* 2A J. Sutherland, *Statutes and Statutory Construction* § 46.06 (C. Sands 4th ed. rev. 1984). However, in construing 29 U.S.C. § 1002(23), the Second Circuit placed such undue emphasis on the phrase "in the form of" that it effectively read out the words that follow it: "commencing at a normal retirement age...."

The ERISA definition of accrued benefit is only based upon two characteristics—it must be in the form of (1) an annual benefit that (2) commences at a normal retirement age. The American Stores' plan, however, meets only one of these two requirements. In fact, the American Stores' plan can best be described as one providing an annual benefit commencing at a *non-normal* retirement age.

■ This interpretation is bolstered by § 1054(c)(3) which provides:

> in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age ... the employee's accrued benefit, or the accrued benefits derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount....

29 U.S.C. § 1054(c)(3). This section enables one to calculate an employee's accrued benefit in those cases where the benefits either are not annual or are not commenced at a normal retirement age by calculating the "actuarial equivalent of such benefit...." *Id.* Under § 1054(c)(3) a non-normal retirement age benefit that is actuarially reduced to reflect its payment prior to normal retirement age may be a benefit "expressed in the form of an annual benefit commenc-ing at normal retirement age." However, a failure actuarially to reduce an early retirement benefit to reflect its earlier payment has the effect of increasing its value so that it no longer reflects the retirement benefit calculated as of the normal retirement age. Thus, our analysis of the relevant ERISA provisions leads us to conclude that to the extent the early retirement benefits actuarially exceed the normal retirement benefits, the excess is not an accrued benefit and may, therefore, be reduced by the plan sponsor without violating ERISA.[7]

Under this analysis, American Stores' decision to terminate the Rule of 80 Pension was entirely appropriate. The annual benefit paid to a pensioner retiring under the Rule of 80 Pension equalled that paid to a pensioner retiring under the Normal Retirement Pension. The only difference between the two plans is that depending upon the number of years worked by and the age of the pensioner, the pensioner qualifying under the Rule of 80 Pension would begin receiving his annual benefits *before* reaching normal retirement age. Therefore, the total lifetime amount paid to a pensioner retiring under the Rule of 80 Pension exceeds that paid to a pensioner retiring under the Normal Retirement Pension because the Rule of 80 pensioner receives the benefits for a longer time. Except for those extra years of pre-normal retirement age benefits paid under the Rule of 80 Pension, the Rule of 80 Pension was a carbon copy of the Normal Retirement Pension. Had American Stores recognized separate value to the Rule of 80 Pension, the extra amount it would have paid would have been attributable solely to the pre-normal retirement age benefits payable to early retirees. Because these pre-normal retirement age benefits are not "accrued benefits," American Stores had no obligation to cash-out the Rule of 80 Pension.[8]

---

7. We note that *Pratt v. Petroleum Prod. Management Employee Sav. Plan and Trust,* 920 F.2d 651 (10th Cir.1990) is inapposite. The issue of whether an early retirement benefit is an accrued benefit was not before this court in *Pratt. Pratt* dealt with an individual account plan, not a defined benefit plan. Under 29 U.S.C. § 1002(23), an accrued benefit under an individ-ual account plan is defined as "the balance of the individual's account." *Id.*

8. The appellees admit that the American Stores actuaries calculated the benefits earned by those employees who qualified for a Rule of 80 Pension by February 2, 1985.

## II. *Legislative History*

Next, we turn to the relevant legislative history, which supports the view that to the extent that early retirement benefits actuarially exceed the normal retirement age benefits, the non-actuarially reduced excess is not an accrued benefit. We examine the legislative history of ERISA and REA below.

### A. Legislative History of ERISA

An important part of the legislative history is contained in a report on ERISA prepared by the House Ways and Means Committee. The relevant portion of the report provides:

> In the case of a defined benefit plan the bill provides that the accrued benefit is to be determined under the plan, subject to certain requirements. The term 'accrued benefit' refers to pension or retirement benefits and is not intended to apply to certain ancillary benefits, such as medical insurance or life insurance, which are sometimes provided for employees in conjunction with a pension plan, and are sometimes provided separately. To require the vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income. Also, where the employee moves from one employer to another, the ancillary benefits (which are usually on a contingency basis) would often be provided by the new employer, whereas the new employer normally would not provide pension benefits based on service with the old employer. *Also, the accrued benefit to which the vesting rules apply is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age,* or so-called social security supplements which are commonly paid in the case of early retirement but then cease when the retiree attains the age at which he becomes entitled to receive current social security benefits, or any value in a plan's joint and survivor annuity provisions to the extent that exceeds the value of what the participant would be entitled to receive under a single life annuity.

H.R.Rep. No. 807, 93d Cong., 2d Sess. 60, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4670, 4726 (emphasis added).

Both the district court in this case and the Second Circuit in *Amato,* concluded that when read in its entirety, the passage quoted above is best understood as referring only to benefits that are "temporary or ancillary in nature ... which a new employer would normally be expected to provide," *Amato,* 773 F.2d at 1410. *See American Stores Co.,* 716 F.Supp. at 1398. Therefore, the district court in this case and the Second Circuit in *Amato* concluded that the passage does not shed any light on the issue of whether unreduced early retirement benefits fall within the meaning of the term "accrued benefit" in cases like this one.

We disagree. The fact that the sentence at issue begins with the word "[a]lso" and the fact that the comma after the phrase "retirement age" separates the underlined passage from the discussion of ancillary social security supplements included in the remainder of the sentence indicates that the sentence at issue is independent of the discussion of ancillary benefits found in the preceding sentences. *See Petrella v. NL Indus., Inc.,* 529 F.Supp. 1357, at 1366 n. 5 (D.N.J.1982) ("The House Report [No. 807] appears to establish *three* categories of benefits: 1) accrued benefits, 2) ancillary benefits and 3) *other items not included in the definition of 'accrued benefits.'"*) (emphasis added). We are not alone in reading the House Report as supporting the proposition that early retirement benefits are not "accrued benefits" under ERISA. *See Tilley,* at 759; *Bencivenga,* 763 F.2d at 577. *See also Ashenbaugh v. Crucible, Inc., 1975 Salaried Retirement Plan,* 854 F.2d 1516, 1526 (3d Cir.1988), *cert. denied,* 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1019 (1989) (supporting the proposition that unfunded early retirement benefits are not "accrued benefits"). *Cf. De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1193 (4th Cir.1989) (citing H.R.Rep. No. 807 in support of the proposition that the right

of plan members to receive monthly, subsidized early retirement benefits was forfeitable); *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 284 & n. 9 (3d Cir.1988) (quoting H.R.Rep. No. 807 in the course of holding that early retirement benefits are not accrued benefits and that, as a result, a pension plan provision authorizing early retirement only if it is determined to be in employer's interest did not violate ERISA).

The Plan emphasizes that the quoted passage from H.R.Rep. No. 807 expressly refers only to the "accrued benefit[] *to which the vesting rules apply.*" Appellees' Br. at 16 (emphasis in original). Therefore, the Plan argues that the House Report is inapposite because only ERISA's accrual rules are at issue in this case and the vesting rules, which determine when an accrued benefit becomes nonforfeitable, are not applicable. We disagree. The passage quoted from H.R.Rep. No. 807 is relevant to determining the meaning of the term "accrued benefit." That term is defined in 29 U.S.C. § 1002(23), which is part of ERISA's general definitions provision. The definitions provision applies by its terms to an entire subchapter of Title 29 of the United States Code, which includes both the accrual rules (29 U.S.C. § 1054) and the vesting rules (29 U.S.C. § 1053). Therefore, the structure of the statute belies the Plan's position. Moreover, we are unable to determine, and Plan does not offer, any logical reason why Congress would have intended for the term "accrued benefit" to have a different meaning for purposes of the vesting rules than for the accrual rules. Finally, we note that the House Conference Report contains a comparable provision which omits the phrase "to which the vesting rules apply." H.R. Conf.Rep. No. 1280, 93d Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 5038, 5054.

In addition although the initial versions of the ERISA bill as proposed in the Senate and the House differed, the House version ultimately prevailed. In commenting on the House version of the ERISA bill, the House Committee on Education and Labor suggested that the extra value attributable to the early payment of normal retirement age benefits should not be considered an accrued benefit. *See* House Comm. on Educ. and Labor, *Employee Benefit Security Act of 1974: Material Explaining H.R. 12906 Together with Supplemental Views, reprinted in* II *Legislative History* 3293, 3329 ("The committee believes it is desirable not to discourage early retirement plans[;] accordingly the accrued benefit computation shall be made, for the purposes of the bill, only with regard to the benefit payable at the normal or regular retirement age. The value of any benefit payable under a plan prior to that age may be disregarded."); H.R.Rep. No. 807, 93d Cong., 2d Sess. 61 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 4670, 4727 ("In order not to impose an undue cost burden on plans which provide for early retirement ... the committee bill makes clear that the fact that benefits under the plan may be payable to certain employees before normal retirement age may be disregarded.").

## B. Legislative History of the Retirement Equity Act of 1984

The Second Circuit in *Amato* attempted to support its interpretation of ERISA by referring to the legislative history of the amendments to ERISA made in the Retirement Equity Act of 1984. Section 301(a)(2) of the 1984 Act provides that an amendment to an ERISA plan which reduces an early retirement benefit "shall be treated as reducing accrued benefits." The House Ways and Means Committee Report relating to the 1984 Act indicates that this provision is merely a clarification of existing law. *Amato*, 773 F.2d at 1411. However, we do not give weight to this legislative history for two reasons.

First, the Supreme Court has held that the views expressed by a later Congress about an earlier enactment is of little, if any, relevance. *See Mackey v. Lanier Collection Agency and Serv., Inc.*, 486 U.S. 825, 839–40, 108 S.Ct. 2182, 2190, 100 L.Ed.2d 836 (1988); *Teamsters v. United States*, 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977). Second, the Senate Finance Committee Re-

port relating to the 1984 Act expressly provides that "no inference is to be made" about pre–1984 ERISA law from the 1984 Act and its legislative history. S.Rep. No. 575, 98th Cong., 2d Sess. 28, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2547, 2574. *See also* 130 Cong.Rec. 22,501 (1984) (statement of Sen. Dole) ("[I]t is my understanding that this provision is not intended to apply to amendments made on or before July 30, 1984, and that no inference is to be drawn from them as to prior law. In particular, this provision would not affect any current litigation with respect to plan amendments adopted before July 30, 1984.").[9]

### III. *Administrative Interpretations*

Like the statutory language and legislative history of ERISA, we interpret the relevant Treasury regulations and Revenue Ruling as supporting our view that unreduced early retirement benefits are not accrued benefits.

Treasury Regulation § 1.411(a)–7(a)(1)(ii) provides, in relevant part:

> In general, the term 'accrued benefits' refers only to pension or retirement benefits. Consequently, accrued benefits do not include ancillary benefits not directly related to retirement benefits.... For purposes of this paragraph a subsidized early retirement benefit which is provided by a plan is not taken into account, except to the extent of determining the normal retirement benefit under the plan.

26 C.F.R. § 1.411(a)–7(a)(1)(ii) (1984).

While § 1.411(a)–7(a)(1)(ii) seems clear and unequivocal, some ambiguity is introduced by Treasury Regulation § 1.411(d)–3(b), which provides in relevant part:

(b) *Prohibition against accrued benefit decrease.* Under section 411(d)(6) a plan is not a qualified plan ... if a plan amendment decreases the accrued benefit of any plan participant.... For purposes of determining whether or not any participant's accrued benefit is decreased, all the provisions of a plan affecting directly or indirectly the computation of accrued benefits which are amended with the same adoption and effective dates shall be treated as one plan amendment. *Plan provisions indirectly affecting accrued benefits include, for example, ... actuarial factors for determining optional or early retirement benefits.*

26 C.F.R. § 1.411(d)–3(b) (1984) (emphasis added).

The most plausible way of reconciling these two regulations is to conclude that "the amount in excess of the actuarial equivalent of normal retirement benefits is a subsidy, and that this subsidized amount is not protected from reduction as an accrued benefit." *Bencivenga*, 763 F.2d at 580. Therefore, read together, the two regulations are best understood as permitting an employer to increase the discount factor used in computing early retirement benefits as long as it is done solely "to achieve *bona fide* actuarial equivalence" to the benefits that an employee would receive upon retirement at normal retirement age. *Bencivenga*, 763 F.2d at 580.[10]

Despite the Plan's arguments to the contrary, we do not believe that Rev.Rul. 81–12, 1981–1 C.B. 228, is inconsistent with our reading of the Treasury regulations. In Rev.Rul. 81–12, the IRS stated only that "Section 411(d)(6) of the [Internal Revenue] Code and section 1.411(d)–3(b) of the regu-

---

**9.** In addition, during the debate in the House of Representatives concerning REA, one of the authors of ERISA expressed his view that "[u]nder present law, the elimination of an early retirement subsidy is not a decrease in accrued benefits, because by definition the value of any such subsidy is not part of the accrued benefit." 130 Cong.Rec. 23,482 (1984) (statement of Rep. Erlenborn).

**10.** This view is supported by Treas.Reg. § 1.411(c)–1(e)(1), which is largely a restatement of § 204(c)(3) of ERISA. Section 1.411(c)–1(e)(1) provides, in relevant part:

> In the case of a defined benefit plan ... if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, such benefit ... shall be the actuarial equivalent of such benefit.

26 C.F.R. § 1.411(c)–1(e)(1) (1984).

lations do not preclude a change in the actuarial basis [used to determine a plan participant's early retirement benefits]. They do, however, preclude a change from decreasing a participant's accrued benefit." Rev.Rul. 81–12, 1981–1 C.B. at 229. Nowhere in Rev.Rul. 81–12 is the term "accrued benefit" defined to include early retirement subsidies. Indeed, the two examples used to illustrate the operation of Rev. Rul. 81–12 and the related statutory and regulatory provisions show how the actuarial factor can be adjusted to effect true equivalence. This interpretation of Rev. Rul. 81–12 is consistent with that of Representative Erlenborn, who expressed the following views during the House debate concerning REA:

> Rev. Rul. 81–12 states that a plan amendment that changes actuarial factors may not decrease a participant's accrued benefit, and provides standards for plan amendments in this area. This ruling relates only to actuarial factors for the 'accrued benefit' which ... does not include subsidized early retirement benefits....

130 Cong.Rec. 23,482 (1984).

■ Even if we believed that Rev.Rul. 81–12 supports the view that unreduced early retirement benefits are accrued benefits, we would follow the approach taken by the Third Circuit and reject Rev.Rul. 81–12 to the extent it is inconsistent with our interpretation of ERISA and the relevant Treasury regulations. *See Bencivenga*, 763 F.2d at 580. Unlike Treasury regulations, which are promulgated in accordance with the notice and comment requirements of the Administrative Procedure Act, revenue rulings "do not have the force and effect of law" and therefore are "accorded less weight than regulations." *Flanagan v. United States*, 810 F.2d 930, 934 (10th Cir.1987); *see also Bencivenga*, 763 F.2d at 580.

### Conclusion

Because we conclude that unreduced early retirement benefits were not accrued benefits under ERISA prior to its amendment by REA in 1984, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion on the issue of whether the amendment to the plan eliminating the Rule of 80 Pension was in fact made before July 30, 1984.